**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ELIZABETH HORTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 02:06-CV-00526-MHT-DRB** |
| | ) | |
| **DON WILLIAMS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT SHOCKLEY'S BRIEF**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

Comes now Defendant Gerald G. Shockley, by and through counsel, Troy King, Attorney General of Alabama, and Jack Wallace, Jr., Assistant Attorney General, to submit this brief in support of his motion for summary judgement. The Defendant relies upon the pleadings, evidentiary submissions and his brief in support of the motion.

**SUBMISSION OF EVIDENCE**

Defendant Shockley expressly adopts the evidentiary submissions filed by the co-defendants in this civil action, to wit:

DE A, Deposition of Elizabeth Horton with Exhibits

DE B, Deposition of Felicia Barrow with Exhibits

DE C, Deposition of Cliff Johnson with Exhibits

DE D, Deposition of Anthony Green with Exhibits

DE F, First Affidavit of Gerald G. Shockley with Attachments

DE G, Second Affidavit of Gerald G. Shockley with Attachment

DE H, Affidavit of Michael Roeder

DE I, Affidavit of Don Williams

DE J, Affidavit of Danielle Pirkle

## STATEMENT OF UNCONTESTED MATERIAL FACTS

Defendant Gerald Shockley is employed by the Alabama Attorney General's Office as a Senior Special Agent and has been so employed for twelve years. Before being employed by the State of Alabama, Defendant Shockley was employed as a Special Agent by the Federal Bureau of Investigation (FBI) for twenty five years. (DE F, First Shockley Affidavit).

As a Senior Special Agent for the Attorney General's Office, Shockley was assigned, after the retirement of Special Agent Michael Roeder, to further investigate allegations made by Plaintiff Elizabeth Horton about her former employer[1], National Seating and Mobility (NSM), a provider of specialized, made to order wheelchairs for crippled children. The investigation was initiated upon the receipt of a referral memorandum from the Alabama Medicaid Agency that was written by Felecia S. Barrow of the Alabama Medicaid Agency's Prior Approval Unit. The memorandum, dated 9 July 2004, was based upon allegations made by Elizabeth Horton to Felicia Barrows after Horton was terminated by NSM. (DE B, Barrow Deposition, page 49; DE G, Second Shockley Affidavit, Attachment A, Summary Report of Investigation, Barrow Interview, 0089-0104). In her memorandum, Barrow stated that the Prior Approval Unit of the Alabama Medicaid Agency had been made aware of potential issues involving NSM that included, among other allegations, "Forgery of recipients' signatures on delivery tickets for durable medical equipment." (DE F, First Shockley Affidavit, Attachment 1).

The case or investigation was originally assigned to another agent, Special Agent Michael Roeder, of the Alabama Attorney General's Office, Medicaid Fraud Control Unit.

---

[1] Horton was actually employed by Kelly Services and furnished to NSM as a temporary worker by Kelly Services.

Agent Roeder interviewed Plaintiff Elizabeth Horton on 15 April 2005. During the interview she told Roeder that she worked for NSM from March 2004 to June 2004 as a billing clerk/office worker responsible for Medicaid, Medicare and private insurance billings. (Amended Complaint, Para. 7). Horton was a temporary worker furnished to NSM by Kelly Services. She stated to Roeder that during the time that she worked for NSM, she became aware of numerous occasions that Medicaid was billed for wheelchairs and other items that were not delivered by NSM. She knew this because several patients or their sponsors called Horton to inquire about their equipment which had not been delivered. She told Roeder that she kept a record of the patients who called to inquire and that she would be willing to provide the Attorney General's Office with copies of her notes substantiating her allegations. Horton told Roeder that she had inquired about the problem of not delivering wheelchairs as billed with Emily Williams, one of the owners or managers of NSM, only to be told not to worry about it. (DE F, First Shockley Affidavit, Interview with Michael R. Roeder, Attachment 2; DE H, Affidavit of Michael Roeder).

During the interview, Roeder provided Horton with a detailed list of billings to the Alabama Medicaid Agency by NSM for the period 1 Oct 2003 through 31 December 2004. After examining the list, Horton placed a check mark by 37 names of individuals who contacted her when she was working at NSM to complain that they had not received their wheelchairs. (DE F, First Shockley Affidavit, Interview with Michael R. Roeder, Attachment 2 and Attachment 3; DE H, Affidavit of Michael Roeder).

Special Agent Roeder retired from State service in May, 2005 and the case was assigned at that time to Defendant Shockley for further investigation. Shockley attempted several times to schedule a meeting with the Plaintiff to re-interview her but was unsuccessful. To determine the

validity of the allegations made by the Plaintiff against NSM to the Alabama Medicaid Agency and to Roeder, Shockley attempted to contact the sponsors of the 37 children checked on the list by Horton as Medicaid recipients who did not receive their wheelchairs.  He was able to contact 24 sponsors for 24 of the 37 children indicated by Horton as having not received their wheelchairs.   All 24 contacted by Shockley stated that they indeed received their wheelchairs from NSM, contrary to the allegations made by Horton.  (DE H, Affidavit of Michael Roeder; DE F, First Shockley Affidavit, Attachment 4; DE G, Second Shockley Affidavit, Attachment A, Pages 0036-0038, 0055-0082)

During the course of his investigation, Shockley interviewed Felecia Barrow on 23 June 2005 about the allegations Horton made to her that resulted in Barrow's memorandum of 9 July 2004.  Shockley asked Barrow, "Are you familiar with the allegation [made by Horton] that there were chairs not delivered?"  Barrow replied, "I think that she had mentioned something like that to me but there was nothing that I witnessed in the office from the request that we received that would indicate or calls from recipients that, hey I didn't get my chair from National Seating."  Shockley then asked Barrow, "That's what she was telling you, that she got calls from recipients and responses?"  Barrow answered, "No she was telling me that there were, she knew that there were cases where the chairs had not been delivered to clients and even cases where they would order a chair for a client but let another client borrow the chair and use it for a period of time and then turn it back in and then they would get it to another recipient as a new chair." Barrow then added, "But I never saw anything that would, you know, show as documented proof."  (DE G, Second Shockley Affidavit, Attachment A, Summary Report of Investigation, Barrow Interview, 0089-0104).

On 1 August 2005, Shockley reviewed the evidence developed by him and Roeder with Assistant Attorney General Bruce M. Lieberman, Director of the Attorney General's Medicaid Fraud Control Unit.  Upon a consideration of the facts, Lieberman authorized the prosecution of the Plaintiff for the offense of False Reporting to Law Enforcement Authorities as provided in Ala. Code 1975 §13A-10-9.[2]  Shockley proceeded on that day to the Montgomery County District Court Magistrate, Holley Faems, filed a complaint and obtained a warrant for the arrest of Mrs. Elizabeth Horton, charging her with furnishing a false report to police.  (DE F, First Shockley Affidavit, Attachment 4; DE G, Second Shockley Affidavit, Attachment A, Summary Report of Investigation, 0036-0038).

Shockley gave the following statement to the magistrate in the form of his affidavit to substantiate his allegations.

> Your affiant, Gerald G. Shockley, an Investigator with the Alabama Attorney General's Office, Montgomery, Alabama does hereby depose and affirm that he has conducted an investigation and determined that there is probable cause to believe that Elizabeth Horton did on 4/15/05 make a false report to a law enforcement officer employed by the Alabama Attorney General's Office, in violation of Alabama Code 13A-10-9.
>
> On April 15, 2005, Ms Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed.  Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.
>
> Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.

---

[2] "A person commits the crime of false reporting to law enforcement authorities if he knowingly makes a false report or causes the transmission of a false report to law enforcement authorities of a crime or relating to a crime."

Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.

After conducting investigation and only finding evidence refuting the allegation, your affiant concludes there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered.

(DE F, First Shockley Affidavit, Attachment 4)

Thereafter, the Plaintiff, Elizabeth Horton was arrested and charged with violating Ala. Code 13A-10-9, False Reporting to Law Enforcement Authorities. Upon trial, she was found not guilty and decided to bring this civil action. (Amended Complaint, paragraphs 20-23).

## SUMMARY JUDGEMENT STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting

6

evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id. a*t 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P.56(c).

## ARGUMENT

The Plaintiff filed this action pursuant to 42 U.S.C. § 1983, seeking damages for violations of her rights pursuant to the Fourth, Fifth and Fourteenth Amendments. The Amended Complaint has three counts. Count One is directed at Defendant Special Agent Gerald Shockley for alleged violations of Horton's rights under the Fourth, Fifth, and Fourteenth amendments as a result of allegedly causing her to be arrested and prosecuted without probable cause. (Amended Complaint, paragraphs 17-23 and prayer for relief (a)). Count Two, which is directed at Defendant Williams, alleges violations of these same constitutional rights because

Williams, allegedly acting "in conjunction with defendant Shockley,"[3] "caused her to be subjected to a criminal proceeding whose sole basis was the now proven false statement of defendant Williams" in which "he accused her of lying because her employment with National Seating and Mobility, Inc. was terminated." (Id., paragraphs 32, 34-37 and prayer for relief (a)). Count Three is directed at National Seating and Mobility and alleges that it has liability for the alleged acts of Williams under the doctrine of respondeat superior. (Id., paragraphs 48-49 and prayer for relief (a)).

Defendant Shockley filed a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the amended complaint which was granted in part and denied in part by this Honorable Court. The Court dismissed the allegations in the complaint against Shockley in his official capacity as well as Plaintiff's Fifth Amendment claim. Therefore, the surviving claims involve alleged violations of the Plaintiff's rights under the Fourth and Fourteenth Amendments as well as a state law claim for malicious prosecution.

**I. Fourth and Fourteenth Amendment Issues – Qualified Immunity**

The Plaintiff asserts that Defendant Shockley "caused her to be detained and arrested without probable cause" for the offense of furnishing a false report to a law enforcement officer as provided in Ala. Code 13A-10-9. She avers that this arrest and detention without probable cause were unreasonable searches and seizures contrary to the Fourth and Fourteenth Amendments.

At first flush it appears that the Plaintiff is pursuing claims of false arrest but the actual claim is for malicious prosecution. The distinction with a different between the former and the

---

[3] Although Horton alleges that Williams acted "in conjunction with" Shockley, in her deposition she denied that there was a conspiracy between the two: "Q: Do you claim in this case that there's some type of conspiracy between National Seating and Don Williams and the State of Alabama? A: Wait a minute. First of all, no, I don't think there's any conspiracy…." *Horton depo.* at 229:22-230:4.

later is the existence of legal procedure.  The Supreme Court in *Heck v. Humphrey,* 512 U.S. 477 (1994), noted the distinction between a common law malicious prosecution claim and false arrest claim:

> The common-law cause of action for malicious prosecution provides the closest analogy to claims of the type considered here because, unlike the related cause of action for false arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process. "If there is a false arrest claim, damages for that claim cover the time of detention up until the issuance of process or arraignment, but not more."

*Heck,* 512 U.S. at 484 (citation omitted) *see Wallace v. Kato,* 127 S.Ct.1091 at 1096 (false imprisonment [or arrest] involves detention " *without legal process,* " and ends once the victim becomes held pursuant to such process, whereas "the 'entirely distinct' tort of malicious prosecution ... remedies detention accompanied ... by *wrongful institution* of legal process.").

In the case presently before this Honorable Court, it is undisputed that the Defendant secured an arrest warrant prior to the Plaintiff being taken into custody. Following the Court's lead in *Heck,* the Eleventh Circuit has held that a Fourth Amendment unreasonable seizure claim is most closely analogous to the common law tort of malicious prosecution when the seizure involves obtaining an arrest warrant or is otherwise pursuant to legal process. *Whiting v. Traylor,* 85 F.3d 581, 585 (11th Cir.1996); *see also Kelly v. Curtis,* 21 F.3d 1544, 1553-54 (11th Cir.1994) (treating as malicious prosecution claim an allegation that detectives should have known that affidavit for arrest warrant failed to establish probable cause). "In contrast, where an arrest is made before the commencement of a criminal proceeding, the most analogous tort might be that of 'false arrest.' " *Whiting,* 85 F .3d at 585 n. 8.

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983." *Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir.2003); *see Uboh v. Reno,* 141 F.3d 1000, 1002-04 (11th Cir.1998); *Whiting,*

85 F.3d at 585. A claim for malicious prosecution does not accrue until the criminal proceedings terminate in plaintiff's favor. *Uboh,* 141 F.3d at 1004; *Kelly v. Serna,* 87 F.3d 1235, 1239 (11th Cir.1996). "[W]here a section 1983 plaintiff is seized following the institution of a prosecution (for example, after a warrant has been issued for arrest ... ) and he seeks to recover damages for all the elements of the prosecution, he can properly wait until the prosecution terminates in his favor to bring his section 1983 claim which alleges that the seizure was unreasonable." *Whiting,* 85 F.3d at 585-86.

To the extent that Plaintiff is alleging that her Fourteenth Amendment rights were violated by her continued detention despite her claims of innocence, the law is clear that malicious prosecution is the appropriate cause of action for seeking damages for confinement pursuant to legal process. *See Calero-Colon,* 68 F.3d at 4. "The Fourteenth Amendment does not protect against all deprivations of liberty. It protects only against deprivations of liberty accomplished 'without due process of law.' " *Baker v. McCollan,* 443 U.S. 137, 145 (1979). The Supreme Court has held that "the substantive due process component of the Fourteenth Amendment did not provide the constitutional source of a right to be free from malicious prosecution." *Kingsland,* 369 F.3d at 1227 n. 17 (citing *Albright v. Oliver,* 510 U.S. 266, 274-75 (1994)). Rather, the right to be free from malicious prosecution is actually an expression of the Fourth Amendment right to be free from an unlawful seizure. *See Whiting,* 85 F.3d at 584 & n. 4. Accordingly, Plaintiff's prolonged detention is not a violation of his Fourteenth Amendment rights.

In her amended complaint, the Plaintiff alleges that Defendant Shockley is liable for malicious prosecution because he knew of facts provided to him by Felicia Barrow of the Alabama Medicaid Agency that would show that the Plaintiff's allegations were true and correct

concerning *false or fraudulent dates allegedly placed upon documents by NSM*.  The Plaintiff implies Defendant Shockley wrongfully obtained an arrest warrant charging her with giving a false report to law enforcement officers, contrary to Ala. Code 13A-10-9, when he knew that her report concerning said dates were true and correct.  Therein lies the rub.  At no time, ever, did the Defendant Gerald Shockley allege that the Plaintiff gave false reports concerning false or fraudulent dates placed upon documents by NSM in order to obtain payments when the company was not entitled to said payments.  Rather, as stated in his affidavit that he submitted to the magistrate of the Montgomery County District Court, Defendant Shockley alleged that the Plaintiff gave a false report to law enforcement officers when she gave a list of 37 names to Special Agent Michael Roeder of persons that had complained to her of not receiving their wheelchairs.  He considered this to be a false report after contacting 24 of the 37 persons named by the Plaintiff only to find that they had all received their wheelchairs, contradicting the Plaintiff emphatically.  Dates, true, fraudulent or imagined had no part in the issuance of the arrest warrant for the Plaintiff charging a violation of Ala. Code 13A-10-9.  The entire set of allegations against Gerald Shockley contained in Count One of the amended complaint are premised on facts that do not exist, to wit, that Shockley alleged that the Plaintiff lied about dates on documents.

Defendant Shockley contends that he is entitled to qualified immunity from all liability arising from the warrant applications and judicial testimony.   Defendant Shockley was at all times a state employee who was engaged in the discharge of his duties that involved the exercise of discretion that he gained in his 37 years as a law enforcement officer.  He asserts the protection of qualified immunity and asks that this civil action be dismissed.

Defendant would not be entitled to absolute immunity from Plaintiff's allegation that he lacked probable cause to apply for an arrest warrant, but he may be entitled to qualified immunity. *Malley v. Briggs,* 475 U.S. 335, 343 (1986) ( "In the case of the officer applying for a warrant, it is our judgment that the judicial process will on the whole benefit from a rule of qualified rather than absolute immunity."). Qualified immunity shields government officials performing discretionary functions from suits in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)); *see also Anderson v. Creighton,* 483 U.S. 635, 638 (1987). The doctrine of qualified immunity " 'ensure[s] that before they are subjected to suit, officers are on notice their conduct is unlawful.' " *Hope,* 536 U.S. at 739 (quoting *Saucier v. Katz,* 533 U.S. 194, 206 (2001)).

For government officials to be entitled to qualified immunity, they must show that they were acting within the scope of their discretionary authority when the alleged unconstitutional act occurred. *Wood v. Kesler,* 323 F.3d 872, 877 (11th Cir.2003); *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (2002). Once government officials have established that they were acting within the scope of their discretionary authority, the burden then shifts to the plaintiff to demonstrate that qualified immunity is inappropriate. *Vinyard,* 311 F.3d at 1346. The Supreme Court has established a two-part analysis for making this determination. *Dalrymple v. Reno,* 334 F.3d 991, 995 (11th Cir.2003) (citing *Saucier,* 533 U .S. at 201). Viewing the facts in the light most favorable to the Plaintiff, the Court must first determine whether Defendant's conduct violated a constitutional right. *Id.* If a violation of a constitutional right is sufficiently alleged in the

complaint, the court must then assess whether that right was clearly established at the time of the violation. *Id.*

Shockley was clearly acting within his discretionary authority when he applied for the arrest warrants, so the remaining issue is whether his actions violated clearly established constitutional law. "[O]nly where the warrant [affidavit] is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley,* 475 U.S. at 344-45 (citations omitted). According to the *Malley* Court, the determinative question:

> is whether a reasonably well-trained officer ... would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant. If such was the case, the officer's application for a warrant was not objectively unreasonable, because it created the unnecessary danger of an unlawful arrest.

*Id.* at 344.

In *Garmon v. Lumpkin County,* 878 F.2d 1406 (11th Cir.1989), the Eleventh Circuit applied *Malley* to an affidavit that simply stated that the suspect "did ... commit the offense of false report of a crime" to find that the affiant officer had committed a constitutional violation. *Id.* at 1408. The Court held that "such a conclusory affidavit clearly is insufficient to establish probable cause. The affidavit contains neither information providing the basis for the affiant's belief nor any affirmative allegation that the affiant had personal knowledge of the circumstances surrounding the alleged commission of the crime ." *Id.* at 1408-09.

Defendant Shockley's affidavit is very materially different from the one that the Eleventh Circuit held facially unconstitutional in *Garmon.* Rather than a conclusory allegation, Shockley set forth the facts and his personal knowledge of the facts in great detail. The full and complete text of the affidavit, found at DE F, First Shockley Affidavit, Attachment 4, states:

Your affiant, Gerald G. Shockley, an Investigator with the Alabama Attorney General's Office, Montgomery, Alabama does hereby depose and affirm that he has conducted an investigation and determined that there is probable cause to believe that Elizabeth Horton did on 4/15/05 make a false report to a law enforcement officer employed by the Alabama Attorney General's Office, in violation of Alabama Code 13A-10-9.

On April 15, 2005, Ms Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed. Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.

Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.

Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.

After conducting investigation and only finding evidence refuting the allegation, your affiant concludes there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered.

This statement articulates the basis for Defendant's belief that Plaintiff committed the alleged crime and that he, Defendant Shockley, had personal knowledge of the circumstances of Plaintiff's involvement in the crime. It very completely and thoroughly articulates probable cause. The "substance of all the definitions of probable cause is a reasonable ground for belief of

guilt," *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879, and that belief must be particularized with respect to the person to be searched or seized, *Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238. To determine whether an officer had probable cause to make an arrest, a court must examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause. *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911.

The Court in *Malley* held that the appropriate question is "whether a reasonably well-trained officer in [defendant]'s position would have known that his affidavit failed to establish probable cause *and that he should not have applied for the warrant.* " 475 U.S. at 345 (emphasis added). Inherent in this language is the proposition that the loss of qualified immunity requires not only that a reasonable officer would have found an affidavit to be lacking, but also that the entirety of the factual evidence available to the officer fails to establish probable cause. To interpret the Court's ruling otherwise would unfairly penalize officers who, despite having developed necessary probable cause to arrest a suspect, have filed an insufficient affidavit because of deficient drafting skills. "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford,* 543 U.S. 146, 153 (2004) (citing *United States v. Watson,* 423 U.S. 411, 417-424 (1976)). "In determining whether qualified immunity exists, the issue is not probable cause in fact but 'arguable' probable cause. Actual probable cause is not necessary for an arrest to be objectively reasonable." *Von Stein v. Brescher,* 904 F.2d 572, 578 (11th Cir .1990) (citation and internal quotes omitted). Therefore, even if the warrant was

invalid, the arrest itself would not violate Plaintiff's constitutional rights if there was arguable probable cause that the Plaintiff had given a false report to law enforcement officers.

Defendant Shockley strong argues that the warrant for the Plaintiff was properly issued upon probable cause writ large across the face of his affidavit.  Moreover, given the facts known by him, in light of his 25 years of experience as an agent for the FBI and 12 years as a Special Agent for the Office of the Attorney General, a fair view of all the evidence known to him, whether stated in the affidavit or not, plainly met the minimum threshold for qualified immunity of "arguable probable cause that the Plaintiff had given a false report to law enforcement officers."

In the present case, Shockley knew that Felicia Barrow alleged in her memorandum of 9 July 2004 that the Plaintiff made allegations to Barrow about NSM of "[f]orgery of recipients' signatures on delivery tickets for durable medical equipment."  (DE F, First Shockley Affidavit, Attachment 1).  Shockley knew that the Plaintiff told Special Agent Michael Roeder that Medicaid recipients complained to her about not receiving their wheelchairs and indicated 37 names on a list by placing a check mark by them as being people who complained to her that they did not receive their wheelchairs.  Shockley knew that when he asked Barrow in a taped interview on 23 June 2005 if the Plaintiff made such allegations to her about wheelchairs not being delivered, that Barrow acknowledged that Horton told her about this.  Shockley asked Barrow, "Are you familiar with the allegation [made by Horton] that there were chairs not delivered?"  Barrow replied that "I think that she had mentioned something like that to me but there was nothing that I witnessed in the office from the request that we received that would indicate or calls from recipients that, hey I didn't get my chair from National Seating."  Shockley then asked Barrow, "That's what she was telling you, that she got calls from recipients and

responses?" Barrow answered, "No she was telling me that there were, she knew that there were cases where the chairs had not been delivered to clients and even cases where they would order a chair for a client but let another client borrow the chair and use it for a period of time and then turn it back in and then they would get it to another recipient as a new chair." Barrow then added, "But I never saw anything that would, you know, show as documented proof." (DE G, Second Shockley Affidavit, Attachment A, Summary Report of Investigation,

Shockley attempted to schedule meetings with the Plaintiff to re-interview her but the Plaintiff did not meet with him and in fact did not speak with him until after her arrest when she called him to protest her arrest.

Given the totality of the circumstances, there existed at the very least "arguable probable cause" for Defendant Shockley to believe that the Plaintiff had violated Ala. Code 13A-10-9, and he is entitled to the protection of qualified immunity in this case. Even when viewed in the light most favorable to Plaintiff, had Defendant Shockley included all of the material facts, a reasonable magistrate (or a reasonable officer) could have found probable cause for Plaintiff's arrest.

## II.  State Law Claim of Malicious Prosecution and State Agent Immunity

To the extent that the Plaintiff may be attempting to assert a state law claim against Defendant Shockley, he avers that there was probable cause to support the issuance of the warrant for the Plaintiff for violating Ala. Code § 13A-10-9; that all times pertinent he was acting as a state employee engaged in discharging the duties and responsibilities of his office which call for the exercise of discretion on his part; and that therefore he is immune from suit by virtue of State Agent Immunity.

Under Alabama law, the elements of a claim of malicious prosecution are: (1) institution of a prior judicial proceeding by the present defendant, (2) a lack of probable cause, (3) malice on the defendant's part, (4) termination of the prior proceeding in favor of the present plaintiff, and (5) damage. *Delchamps, Inc. v. Bryant,* 738 So.2d 824, 831-33 (Ala.1999).

Malicious prosecution actions are disfavored in the law. *Cutts v. American United Life Ins. Co.,* 505 So.2d 1211, 1214 (Ala.1987). The Alabama Supreme Court has stated:

> " ' "One of the reasons for this rule is that public policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge. If this were not the case, a large proportion of unsuccessful civil actions would be followed by suits for malicious prosecution, and there would be a piling of litigation on litigation without end." ' "

*Bryant,* 738 So.2d at 832 (quoting *Delchamps, Inc. v. Morgan,* 601 So.2d 442, 445 (Ala.1992), quoting in turn *Liberty Loan Corp. of Gadsden v. Mizell,* 410 So.2d 45, 48 (Ala.1982))

To prevail, the Plaintiff must present substantial evidence indicating that Defendant Shockley lacked probable cause when he initiated the prior proceeding. Probable cause is defined as " 'such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest and strong suspicion that the person arrested is guilty.' " *Delchamps, Inc. v. Morgan,* 601 So.2d at 445 (quoting *Birwood Paper Co. v. Damsky,* 285 Ala. 127, 134, 229 So.2d 514, 521 (1969)). The question in this case therefore is not whether Horton was in fact guilty of furnishing a false report to a law enforcement officer, but whether Shockley had knowledge, in the exercise of ordinary caution and prudence, the facts articulated in his affidavit given to the magistrate. *Morgan,* 601 So.2d at 445.

Keeping in mind the admonition to view the facts in the light most favorable to the non moving party, the Plaintiff has not plead sufficient facts that would call into question the

18

existence of probable cause in the issue of the arrest warrant charging her with violating Ala. Code 13A-10-9.  According to her amended complaint, the facts at issue are whether she gave a report to law enforcement officers about the use of false or fraudulent dates by NSM on documents to obtain payments from Medicaid.  That could not be further from the truth as illustrated by a simple examination of the affidavit furnished by Shockley in which he alleged false reports of Medicaid recipients not being furnished wheelchairs.  For the Plaintiff to place into question the facts stated by the Defendant Shockley, the Plaintiff would be forced to amend her complaint.  It is as if the Plaintiff is arguing apples when the Defendant is holding oranges.

In this case, the Plaintiff has not presented substantial evidence indicating that Shockley lacked probable cause when he initiated the prior proceeding.   Indeed, the Plaintiff cannot present substantial evidence of this nature without a wholesale amendment of her complaint.

Furthermore, there is no allegation or evidence that the Defendant acted with malice.  The lack of malice can be inferred from the strong presence of probable cause in this case.  In a malicious prosecution action, malice may be inferred from the lack of probable cause. *Id.* In addition, "inducing an indictment by procuring and giving false evidence before a grand jury shows a malicious motive." *\*1027 National Sec. Fire & Cas. Co. v. Bowen,* 447 So.2d 133, 140 (Ala.1983). Under § 6-11-20(b)(2) b., the definition of malice includes circumstances under which "the law will imply an evil intent."  Given, again, the strong probable cause present and the lack of any evidence to imply an evil intent, there is no malice present and the allegation of malicious prosecution must fail.

Defendant Shockley asserts the defense of State Agent Immunity under state law.  The Alabama Supreme Court has adopted a burden shifting test in cases where the defendant seeks the shelter of State Agent Immunity.

The Alabama Supreme Court has established a "burden shifting" process when a party raises the defense of State Agent Immunity. *Giambrone v. Douglas,* 874 So.2d 1046, 1052 (Ala.2003). In order to claim State Agent Immunity, a State Agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State Agent to immunity. *Giambrone,* 874 So.2d at 1052; *Ex parte Wood,* 852 So.2d 705, 709 (Ala.2002). If the State agent makes such a showing, the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority. *Giambrone,* 874 So.2d at 1052; *Wood,* 852 So.2d at 709; *Ex parte Davis,* 721 So.2d 685, 689 (Ala.1998). "A State agent acts beyond authority and is therefore not immune when he or she 'fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist.' " *Giambrone,* 874 So.2d at 1052 (quoting *Ex parte Butts,* 775 So.2d 173, 178 (Ala.2000)).

To carry his burden, Defendant Shockley must meet the test articulated in *Ex parte Cranman,* 792 So.2d 392, (Ala.2000). "State-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities." *Ex parte Hayles,* 852 So.2d 117, 122 (Ala.2002). In *Cranman,* this Court restated the rule governing State-agent immunity:

> "A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> "(1) formulating plans, policies, or designs; or
>
> "(2) exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
> "(a) making administrative adjudications;
>
> "(b) allocating resources;

"(c) negotiating contracts;

"(d) hiring, firing, transferring, assigning, or supervising personnel; or

"(3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or

"(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or

"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

"Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent *shall not* be immune from civil liability in his or her personal capacity

"(1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise; or

"(2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."

792 So.2d at 405.

Clearly Defendant Shockley falls within the category of "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons. There is no evidence to suggest that there are any laws, rules or regulations of the United States or of the State of Alabama that would require that the Defendant not be given the benefit of State Agent Immunity, nor is there any creditable evidence that the Defendant acted willfully, maliciously, fraudulently, in bad faith, beyond his authority or under a mistaken interpretation of law.

The Defendant is entitled to the shelter and comfort of State Agent Immunity and this case is due to be dismissed.

There is no question of material fact and the Defendant is entitled to a judgement as a matter of law.

## **CONCLUSION**

The Defendant Shockley respectfully submits that there is no issue of material fact and that he is entitled to a judgement as a matter of law.

Respectfully submitted on this the 19th day of February, 2008.

TROY KING
ATTORNEY GENERAL


/s/ *Jack Wallace, Jr.*
Jack Wallace, Jr.
Assistant Attorney General

Address of Counsel:
Office of the Attorney General
11 South Union Street
Montgomery, AL  36130
334.353.8671
334.242.2433 - fax
JWallace@ago.state.al.us

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, this the 19th day of May, 2007, electronically filed the foregoing with the Clerk of Court using the CM/ECF. The Clerk of Court using the CM/ECF system will send notification of this filing to the following:

Deborah M. Nickson
Attorney at Law

Charles Stewart, III
Laura Domm Taaffe
Quindal C Evans
Elizabeth Brislin Mitchell
Bradley, Arant, Rose & White, LLP

William O. Butler, III
Alabama Medicaid Agency

Dorman Walker
Kelly F. Pate
Balch & Bingham LLP

Courtney Tarver
Tamara Pharrams
Alabama Department of Mental Health
and Mental Retardation

/s/ *Jack Wallace, Jr.*