RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION    2008 MAR 13  P 10: 05

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

ELIZABETH HORTON,            )
    Plaintiff,            )
                )
vs.            )            CASE NO. 02:06-CV-00526-MHT
                )
DON WILLIAMS, et al.,            )
    Defendants.            )

## PLAINTIFF'S BRIEF OPPOSING MOTION FOR SUMMARY JUDGMENT SUBMITTED BY NATIONAL SEATING AND MOBILITY, INC. AND DON WILLIAMS

COMES NOW Plaintiff, Elizabeth Horton and offers this brief in opposition to the Motion for Summary Judgment filed by defendants National Seating and Mobility, Inc., and Don Williams. There is a dispute of material facts that pertain to the liability of the defendants and, in light of plaintiff's substantial evidence, defendants are not entitled to a judgment as a matter of law. The plaintiff relies upon the pleadings, evidentiary submissions, her affidavit, and her brief in support of this motion.

## I.    INTRODUCTION

In 2004, plaintiff Elizabeth Horton was, for two and a half months, a temporary worker at defendant NSM. Contrary to the statement in defendants' introduction plaintiff was not reassigned from NSM; plaintiff had notified the temporary agency for which she worked that she was leaving for a better job. Plaintiff was never informed that her job performance was unsatisfactory to the extent that it could cause a problem with an agency that regulated NSM's business. *(Elizabeth Horton's Aff.  9.)*

Plaintiff in regards to observation of NSM's business practices and statement made to her concerning the irregularities believed that NSM was not adhering to honest business conduct.

1

Defendants states in their introduction that the "very serious allegation was investigated by, among others, defendant Gerald Shockley, from the Alabama Attorney General's office, and determined to be meritless. Curiously they fail to state that the "others" was an Investigator with the Alabama Medicaid Agency, Anthony Green who testified in a deposition that he did not believe plaintiff was a liar and that she exhibited no maliciousness toward defendant. *(See Deposition of Anthony Green at 8:15-9:22).*

Plaintiff agrees that she was arrested and unsuccessfully prosecuted for making false statements to law enforcement officers. At the unrecorded trial, the trial court had the opportunity to observe among others, the demeanor of defendant Special Agent Gerald Shockley, defendant Don Williams, retired special agent Michael Roeder, and plaintiff. The state court chose to believe that plaintiff was telling the truth and acquitted her.

In this brief, plaintiff will show that Williams and NSM are not entitled to summary judgment against her claims.

## II. a. RESPONSE TO MOVANTS' ALLEGED UNDISPUTED FACTS

Plaintiff agrees with the facts as stated in section A of defendants' Statement of Facts to the extent that they relates to plaintiff statement of facts, however, those facts fail to accurately state that defendant Williams while employed as a "technician" in actual practice had great input in the management of the office. *(Defendants' brief p. 1)*

Plaintiff agrees with defendants as stated in Section B of defendants' Statement of Facts to the extent as they relate to her job duties with NSM, and job duties. Plaintiff strongly denies the facts as stated by defendants with respect to her work, work habits, clothing attire, and relationship with Felecia Barrow.

2

Plaintiff admits some of the facts as stated in Section C of defendants' Statement of Facts, but those facts are misleading because she was not dismissed from the employ of NSM and in fact she left the employ of Kelly Services for another job that offered better opportunities for her. Thus by mischaracterizing why she left the employ of NSM Williams provided the inference that she was a disgruntled former employee. This is a blatant invitation for this Court to make a prohibited credibility determination on summary judgment.

Plaintiff admits the facts as stated in Section D in referring to her deposition testimony; however, the defendants' Statement of Facts are misleading in that defendant Williams, an employee of NSM, provided inaccurate information regarding her departure from the workplace of NSM, which is a blatant invitation for this Court to make a prohibited credibility determination on summary judgment.

### b. PLAINTIFF' STATEMENT OF UNDISPUTED FACT

As stated in the Introduction, defendants in their statement of facts did not make any specific reference to the deposition testimony of Anthony Green who is also an investigator with the Alabama Medicaid Agency. Mr. Green, who investigated the same claims reported to the agency as defendant Shockley, testified that he did not believe plaintiff was a liar and that she exhibited no maliciousness toward defendant Williams. *(Deposition of Anthony Green at 8:15-9:22)*. Retired special agent Michael Roeder apologized to plaintiff after she was acquitted on the charge of filing a false report with a law enforcement agency. He further told plaintiff that defendant Shockley was upset with plaintiff because she did not meet with him for an interview. *(Elizabeth Horton's Aff. 10.)*

3

Plaintiff was not terminated nor reassigned to another position because of defendant Williams. Plaintiff had secured another job with better opportunities. (*Elizabeth Horton's Aff. 2.*)

Plaintiff from her tenure with NSM became aware that NSM was interested only in profits not how its employees arrived at the profits. *(Elizabeth Horton's Aff. 8.)*

The testimony of plaintiff, her chief accuser, defendant Shockley, and defendant Williams was heard by a trial judge who believed plaintiff and acquitted her of the charges of filing or causing to be file false information to law enforcement   (*See, Case Summary from the Montgomery County, Alabama District Court, Plaintiff' Exhibit A).*

Ms. Felecia Salary Barrow was deposed on January 30, 2008. Ms. Barrow was employed at the Alabama Medicaid Agency from 1999 until 2005. In 2003 she was assigned to the prior approval unit of the Alabama Medicaid Agency. *(Barrow's Dep. at p. 7:2-7.)*

Plaintiff was not a friend of Ms. Barrow the person to whom she made the report. *(Barrow's Dep. at p. 24: 8).*

Ms. Barrow testified that she was informed by a therapist that they were told not to place dates on the forms submitted by defendant National Seating and Mobility, Inc. (hereafter, "NSM"). *(Barrow's Dep. at p. 26:16).*

Ms. Barrow testified that a wheelchair assessment form which did not have a date was a violation of policy. *(Barrow's Dep. at p. 28:6, 8, & 20).*

By leaving off a date NSM would be able to submit an assessment to the Alabama Medicaid Agency at any time because the agency would not be able to verify when the assessment was actually performed. Therefore the omission of a date was against policy. *(Barrow's Dep. at p. 32:1 & p. 33:16).*

4

Ms. Barrow admitted that one of plaintiff's complaints was the request by NSM to place any date on the forms. *(Barrow's Dep. at p. 35:6, 13).*

Ms. Barrow testified that if a date is not properly placed on a delivery ticket the agency does not have any indication when equipment was delivered to a client. *(Barrow's Dep. at p. 37: 6).*

The failure to place a correct date is tantamount to fraud. *(Barrow's Dep. at p. 40:17.)*

Ms. Barrows testified that the information reported by plaintiff regarding posting of dates was the same as the information that she had "witnessed firsthand". *(Barrow's Dep. at p. 42:10-13). (Also, see attached Exhibit 6 that Ms. Barrow referenced in her testimony).*

Based on what she observed, Ms. Barrow requested an investigation. *(Barrow's Dep. at p. 42:14, 17)*

Ms. Barrows testified that manipulation of dates constitutes fraudulent billing practices. *(Barrow's Dep. at p. 44:18 & 45:1).*

Ms. Barrows testified that she found infractions similar to the report made by plaintiff. *(Barrow's Dep. at p. 59:8, 11).*

Deposition of Clifford Johnson Taken on January 30, 2008

Mr. Johnson is the Chief Investigator for the Alabama Medicaid Agency. *(Johnson's Dep. at p. 7:2).*

Mr. Johnson testified that he remembered that Ms. Felicia Barrow had documentation to support "the fact that there were missing dates on the documents from NSM and the missing dates were part of plaintiff's complaint. *(Johnson's Dep. at p. 25:9, 13, p.26:5).*

5

Mr. Johnson testified to assessment questioned by another person regarding obtaining dates from an employee of NSM is where the fraud occurred. *(Johnson's Dep. at p. 30:14, p. 31:1).*

Mr. Johnson further testified that the assessment and missing dates questioned by another person lined up with the complaint that plaintiff had against NSM. *(Johnson's Dep. at p. 36:1, 9).*

The assessment performed by an individuals vendors other than NSM had dates on them was the same that plaintiff complained of. *(Johnson's Dep. at p. 37:1).*

In response to the question: "Now, I'm just asking you as an investigator.  If you got National Seating & Mobility, know that they need dates, then you have a physical therapist consistently submitting assessments or prescriptions without dates, then you have your Medicaid employee, Felecia Barrow, receiving information, how can any report that Felecia Barrow gave be fraudulent?

Johnson answered, It can't be. "*(Johnson's Dep. at p. 39:21, p. 40:1).*

Anthony Green a special investigator employed by the Alabama Medicaid Agency. *(Green's Dep. p. 5:19, p. 7:9).*

Mr. Green testified that he has investigated approximately 70 cases involving complaints of fraud of a Medicaid provider, and 50 percent of those cases resulted in charges. *(Green's Dep. p. 8:19, p.  9:2).*

Mr. Green testified that none of the complainants were prosecuted and to the best of his knowledge only plaintiff had been prosecuted. *(Green's Dep. p.  9:14, 18).*

Mr. Green was assigned to investigate a similar complaint against NSM. *(Green's Dep. p. 10:12).*

Mr. Green testified that he spoke to Chasley Weeks an ex employer of NSM who informed him that she had information regarding NSM. *(Green's Dep. p.17:15).*

Mr. Green testified that plaintiff's statement regarding the fraudulent act of NSM were the same as the statement provided to him by Ms. Weeks. (Green, Dep. p. 20:21, 23).

Mr. Green testified that he did not think that plaintiff was a liar. (Green's Dep. p. 24:4).

Mr. Green testified in response to the Q. "You have two complainants. You have Chaseley Weeks, former employee, said something is going on. Then you have Elizabeth Horton, a former employee, saying something was going on. What was your gut feeling?

. . .

A. My only gut feeling was, is they contacted with a complaint, as do many other people. When I receive a complaint, I assume that the people that are calling believe that their complaint is legitimate; and I look into it from that basis until I prove or disprove. So my gut feeling was, is that they believe that they had something that they should notify us about. I received the information; I looked into it until I was satisfied that there was nothing there." "*(Green's Dep. p. 38:17, 16, p.39:1).*

Mr. Green testified that Ms. Barrow provided him with example of assessments by NSM that did not contain dates. *(Green's Dep. p. 40:17).*

Mr. Green testified that plaintiff did not express to him any maliciousness toward NSM. *(Green's Dep. p. 54:19, 55:1).*

The Plaintiff left NSM and Kelly Services because she found a permant position with EDS (See Plaintiff Exhibit B). As the defendants are aware, the Plaintiff testified at depositions that Kelly Services jobs were temporary and that she had found a permanent job with EDS.

Plaintiff subsequent to depositions confirmed her employment with EDS. Plaintiff's start date with EDS was July 2004.

### III.    SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court considers evidence and makes factual inferences in the light most favorable to the nonmoving party. Strickland v. Wayne Farms-Southland Hatchery, 132 F. Supp. 2d 1331, 1332 (M.D. Ala. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "Summary judgment is entered only if it is shown 'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Strickland, 132 F. Supp. 2d at 1332 (citing Fed. R. Civ. P. 56(c)). The court does not weigh evidence and determine the truth of the matter but, instead, "solely determines whether there is more than 'some metaphysical doubt' about whether there is a genuine issue for trial." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986), and Matsushita Electric Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

### III. ARGUMENT

A. Plaintiff concedes her Fifth Amendment Claim.

*B. PLAINTIFF'S FOURTEENTH AMENDMENT CLAIM DOES NOT FAIL.*

The Eleventh Circuit has also held that at times there is a "slender category of cases in which the unlawfulness of the conduct is readily apparent even without clarifying caselaw." *Smith v. Mattox*, 127 F. 3d 1416, 1418-19 (11th Cir.1997). This is such a case because defendants' argument is fatally flawed on this ground because of two undisputed facts, namely plaintiff's employment at NSM was not terminated by defendant Williams in that Williams, and

8

defendant Shockley was upset that plaintiff did not meet with him to discuss the allegations against NSM. *(Elizabeth Horton's Aff.  10.)*

It is plain that defendant Williams' motive was to discredit plaintiff, while defendant Williams' a seasoned investigator got miffed because plaintiff would not meet with him to discussed the allegations against NSM.  In this case then it is plausible to infer that there was at the minimum a tacit understanding amongst defendant Williams and defendant Shockley that irregardless of the evidence plaintiff would be arrested and prosecuted. Thus, plaintiff's Fourteenth Amendment Claim is not barred because defendant Shockley is a state law enforcement officer.

## C. PLAINTIFF'S FOURTH AMENDMENT CLAIM DOES NOT FAIL BECAUSE DEFENDANT WILLIAM DOES NOT HAVE IMMUNITY.

The use of false information in an effort to obtain an indictment or conviction violates the Constitution. *Napue v. Illinois*, 360 U.S. 264, 268-70(1959). In this case, the defendants would want this Court to believe that defendant Williams was not a complaining witness. In denying immunity to the instigator of a baseless prosecution in *Foster v. City of Lake Jackson, Tex*, 813 F.Supp. 1262, 1265 (S.D.Tex. 1993) the court noted the different applications to immunity to defamation suits but denied in malicious prosecution cases, saying:

"The Court, however, noted that, in determining immunity issues, the common law distinguished between defamation and malicious prosecution actions. A witness was absolutely immune from a suit seeking to hold him liable for the defamatory effect of his testimony but not from a suit seeking to hold him liable for his role in initiating a baseless prosecution."

However, there is no evidence to suggest that but for the two factors stated above, Shockley irritation at not being able to interview plaintiff and Williams false statement concerning her departure from NSM gave rise to her prosecution. It was Williams' statement that

provided a motive on which Shockley could based his recommendation to arrest plaintiff.

Abusing the judicial process provides the necessary state action for a civil rights claim. Defendant Williams support for granting of his summary judgment motion is based on the contention that he is not a complaining witness. He states that he only denied the allegation of fraud and opined that plaintiff was a disgruntled temporary employee. *(Defendants' brief, p. 13.* Defendant Williams' argument on this point is in conflict with his affidavit *(Williams Aff., ¶. 9)* where he stated that he asked that plaintiff be reassigned. *(Defendants' brief, p. 4).* The true reason for plaintiff leaving the employ of NSM and the employment agency was because she had accepted employment at another company which had offered her better opportunities. *(See, Exhibit 1, and (Elizabeth Horton's Aff. 2.)* Thus it called into question whether defendant Williams' statement regarding the reason why plaintiff left the employ of NSM was malicious designed to punish her for the investigation.   Therefore, Shockley and Williams' use of false information to obtain an indictment violates the Constitution as to which they have no immunity.

D. *PLAINTIFF'S FOURTH AMENDMENT CLAIM DOES NOT FAIL BECAUSE THERE IS STATE ACTION*

We agree with defendants that there are three distinct tests in determining whether the actions of a private entity are properly attributed to the state. In *Willis v. Univ. Health Servs., Inc.,* 993 F.2d 837, 840 (11th Cir. 1993)   the distinctions between those tests were summarized as follows:

"Previously, this circuit set forth the three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The

10

state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [[private party] that it was a joint participant in the enterprise."

Based on the above we submit that a determination must be made on a case-by-case basis whether sufficient state action is present from a non-state actor (defendant) to sustain a section 1983 claim. On page 18, defendants wrote that "It was particularly important to the court that the psychiatrist did not help prepare an affidavit in support of a search warrant that led to the challenged action." In this case, it defies belief that a charge would have been brought against plaintiff if she had not been painted as a disgruntled employee by defendant Williams. Based on the foregoing, we submit that the nexus/joint action test is applicable to this case. In addition we submit that there is evidence of a symbiotic relationship between, defendants Shockley and Williams in that they both wanted to punish plaintiff. There is no evidence that Shockley conducted an in depth investigation as to the nature of plaintiff's departure from the employment agency that assigned her to NSM. Williams had an interested in defeating the allegation of fraud.

In the instant case, Shockley knew or should have known that defendant Williams was potentially biased and had reasons to fabricate, but he conducted no investigation into the truth or falsity of Williams' allegations against the plaintiff. Therefore we submit that the Fourth Amendment claim does not fail.

*E. PLAINTIFF'S FOURTH AMENDMENT CLAIM DOES NOT FAIL BECAUSE THERE IS RESPONDEAT SUPERIOR LIABILITY*

The general rule is that "To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of ...master and servant." *Horn v. Fadal Machining Centers, LLC*, 2007 WL 431427, (Ala. Feb 09, 2007) (citing *Hendley v.*

*Springhill Mem'l Hosp.*, 575 So.2d 547, 550 (Ala.1990). "Proof of a master and servant relationship is tested by the degree of control the alleged master retains over the alleged servant." Id. Hart's dealer policy sets out the extent and degree of control it has over the servant dealer DCL. In the instant case, there defendants are not disputing a master and servant relationship.

We submit that defendants' reliance on *Harvey v. Harvey*, 949 F.2d 1127, (11th Cir. 1992) is misplaced.    In *Harvey*, the Court stated that "A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States." thus "the critical question before this court is whether Charter acted under color of state law or, in the context of the Fourteenth Amendment, whether Charter's alleged actions are "fairly attributable to the State. Id. 1130.

In answering this question we must look to the actions of defendants Shockley and Williams, and the silence of the defendant NSM concerning their supervision of its office in Montgomery. "For a defendant's actions to be fairly attributable to the state, "[f]irst, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id., 1130 (Internal citation omitted) It is undisputed that defendant Shockley was a state actor. As stated earlier in this brief the actions of defendants Shockley and Williams in the prosecution of plaintiff were inextricability tied together (i.e., Shockley was upset with plaintiff because she did not meet with him for an interview, and Williams' statement concerning plaintiff's departure from NSM was incorrect.). It is also undisputed that a person has a constitutional right against unlawful arrest.  There is no evidence that Shockley investigated

Williams' claims thus Williams statement provided a motive for her allegations against NSM, that of a disgruntled employee.

Plaintiff states and it is undisputed that from her observation the bottom line for NSM was profit and it did not inquire as to the method how those profits were obtained. *(Elizabeth Horton's Aff. 9.)* .Thus this practice of NSM negated its respondent superior defense.

CONCLUSION

For the above stated reasons, the Court should deny defendants' Motion for Summary Judgment.

RESPECTFULLY SUBMITTED on this the 13th day of March, 2008.

/s/ Deborah M. Nickson
Deborah M. Nickson

OF COUNSEL
Deborah M. Nickson
2820 Fairlane Drive Suite A-10
Montgomery, AL 36116
334-213-1233

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CERTIFICATE OF SERVICE

I, Deborah M. Nickson, do hereby certify that a true and correct copy of the
foregoing Plaintiff's Brief Opposing Motion For Summary Judgment Submitted By National
Seating And Mobility, INC. and Don Williams   has been served on all counsel and parties of
record, by mailing a copy of the same in the U.S. Mail, envelope properly addressed and
postage prepaid on this 13th day of March, 2008.

Deborah M. Nickson
Attorney for Plaintiff
2820 Fairlane Dr. Ste A-10
Montgomery, AL  36116
334-213-1233

Hon. Charles A. Stewart, III
Bradley, Arant , Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Ste. 780
Montgomery, AL. 36104
Cstewart@bradleyarant.com

Hon. Jack W. Wallace, Jr.
Office of the Attorney General
11 South Union Street
Montgomery, AL. 36130
JWallace@ago.state.al.us

Hon. Kelly Pate,
Hon. Dorman Walker
Balch & Bingham LLP
P.O. Box 78
Montgomery, AL. 36101
DWALKER@balch.com
kpate@balch.com

Hon. Quindal C. Evans
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Ave., Suite 780
Montgomery, Al 36104
qevans@bradleyarant.com