IN THE UNITED STATES DISTRICT COURT RECEIVED
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION 2008 MAR 13 P 10: 03

| | | |
|---|---|---|
| ELIZABETH HORTON, | ) | |
| Plaintiff, | ) | DEBRA P. HACKETT, CLK<br>U.S. DISTRICT COURT<br>MIDDLE DISTRICT ALA |
| vs. | ) | CASE NO. 02:06-CV-00526-MHT-DRB |
| DON WILLIAMS, et al., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S BRIEF OPPOSING DEFENDANT SHOCKLEY'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW Plaintiff, Elizabeth Horton and offers this brief in opposition to the Motion for Summary Judgment filed by defendant Gerald Shockley. There is a dispute of material facts that pertain to the liability of defendant Shockley s and, in light of Plaintiff's substantial evidence defendant is not entitled to a judgment as a matter of law. The Plaintiff relies upon the pleadings, evidentiary submissions, her affidavit, and her brief in support of this motion.

## I. INTRODUCTION

Plaintiff was arrested for filing a false report with the Alabama Medicaid Agency. The facts of this case clearly established that similar reports had been filed and that some of the allegations was similar to the finding by an employee of the agency, therefore as a matter of law Defendant Shockley lacked probable cause and arguable probable cause. Therefore, Defendant Shockley is not entitled to summary judgment on the liability portion of plaintiff's false arrest claim.

1

## STANDARD OF REVIEW

It is well-settled that the party moving for summary judgment has the burden of demonstrating that there is no genuine issue as to any material fact relevant to the motion and that the movant is entitled to judgment as a matter of law. *Adickes v. S. H. Kress & Co.* 398 U.S. 144, 157 (1970). Any doubt as to the existence of a material issue of genuine fact must be resolved against the movant. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157 (1970). Because the burden is on the movant, the evidence presented to the court is always construed in favor of the party opposing the motion and the opponent is given the benefit of all favorable inferences that can be drawn from it. *Matsushita Elec. Indus. Co. V. Zenith Radio Corp.*, 475 U.S. 574 (1986). If there is substantial evidence opposed to the motion for summary judgment such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions, then such motion is due to be denied and the case submitted to a jury. See *Combs v. Plantation Patterns*, 106 F. 3d 1519 (11th Cir. 1997), citing *Carter v. City of Miami*, 870 F. 2d 581 (11th Cir. 1989).

## RESPONSE TO DEFENDANT SHOCKLEY'S STATEMENT OF UNCONTESTED MATERIAL FACTS

Plaintiff only admits and agrees with the facts as set out in paragraphs 1 and 2, page 2 of Defendant Shockley's Statement of Uncontested Material Facts.

PLAINTIFF'S STATEMENT OF UNCONTESTED MATERIAL FACTS.

Defendant Shockley in the rest and remainder of his Statement Of Uncontested Material Facts makes no reference to the undisputed facts to the deposition testimony of Clifford Johnson is the Chief Investigator for the Alabama Medicaid Agency reviewed the file, and that Anthony Green a special investigator employed by the Alabama Medicaid Agency was later assigned to

investigate the same allegations made against National Seating and Mobility (hereinafter, "NSM") at which time he interviewed the Plaintiff.

Such an omission is a blatant invitation for this Court to make a prohibited credibility determination on summary judgment.

Plaintiff was arrested and a tried on the charges was held in the Montgomery County Alabama District Court where the plaintiff was acquitted.

Ms. Felecia Salary Barrow was deposed on January 30, 2008. Ms. Barrow was employed at the Alabama Medicaid Agency from 1999 until 2005. In 2003 she was assigned to the prior approval unit of the Alabama Medicaid Agency. *(Barrow's Dep. at p. 7:2-7.)*

Plaintiff was not a friend of Ms. Barrow the person to whom she made the report. *(Barrow's Dep. at p. 24: 8).*

Ms. Barrow testified that she was informed by a therapist that they were told not to place dates on the forms submitted by defendant National Seating and Mobility, Inc. (hereafter, "NSM"). *(Barrow's Dep. at p. 26:16).*

Ms. Barrow testified that a wheelchair assessment form which did not have a date was a violation of policy. *(Barrow's Dep. at p. 28:6, 8, & 20).*

By leaving off a date NSM would be able to submit an assessment to the Alabama Medicaid Agency at any time because the agency would not be able to verify when the assessment was actually performed. Therefore the omission of a date was against policy. *(Barrow's Dep. at p. 32:1 & p. 33:16).*

Ms. Barrow admitted that one of plaintiff's complaints was the request by NSM to place any date on the forms. *(Barrow's Dep. at p. 35:6, 13).*

3

Ms. Barrow testified that if a date is not properly placed on a delivery ticket the agency does not have any indication when equipment was delivered to a client. *(Barrow's Dep. at p. 37: 6).*

The failure to place a correct date is tantamount to fraud. *(Barrow's Dep. at p. 40:17.)*

Ms. Barrows testified that the information reported by plaintiff regarding posting of dates was the same as the information that she had "witnessed firsthand". *(Barrow's Dep. at p. 42:10-13). (Also, see attached Exhibit 6 that Ms. Barrow referenced in her testimony).*

Based on what she observed, Ms. Barrow requested an investigation. *(Barrow's Dep. at p. 42:14, 17)*

Ms. Barrows testified that manipulation of dates constitutes fraudulent billing practices. *(Barrow's Dep. at p. 44:18 & 45:1).*

Ms. Barrows testified that she found infractions similar to the report made by plaintiff. *(Barrow's Dep. at p. 59:8, 11).*

Deposition of Clifford Johnson was taken on January 30, 2008

Mr. Johnson is the Chief Investigator for the Alabama Medicaid Agency. *(Johnson's Dep. at p. 7:2).*

Mr. Johnson testified that he remembered that Ms. Felicia Barrow had documentation to support "the fact that there were missing dates on the documents from NSM and the missing dates were part of plaintiff's complaint. *(Johnson's Dep. at p. 25:9, 13, p.26:5).*

Mr. Johnson testified to assessment questioned by another person regarding obtaining dates from an employee of NSM is where the fraud occurred. *(Johnson's Dep. at p. 30:14, p. 31:1).*

Mr. Johnson further testified that the assessment and missing dates questioned by another person lined up with the complaint that plaintiff had against NSM. *(Johnson's Dep. at p. 36:1, 9).*

The assessment performed by an individual vendors other than NSM had dates on them was the same that plaintiff complained of. *(Johnson's Dep. at p. 37:1).*

In response to the question: "Now, I'm just asking you as an investigator. If you got National Seating & Mobility, know that they need dates, then you have a physical therapist consistently submitting assessments or prescriptions without dates, then you have your Medicaid employee, Felecia Barrow, receiving information, how can any report that Felecia Barrow gave be fraudulent?

Johnson answered, "It can't be." *(Johnson's Dep. at p. 39:21, p. 40:1).*

Anthony Green is a special investigator employed by the Alabama Medicaid Agency. *(Green's Dep. p. 5:19, p. 7:9).*

Mr. Green testified that he has investigated approximately 70 cases involving complaints of fraud of a Medicaid provider, and 50 percent of those cases resulted in charges. *(Green's Dep. p. 8:19, p. 9:2).*

Mr. Green testified that none of the complainants were prosecuted and to the best of his knowledge only plaintiff had been prosecuted. *(Green's Dep. p. 9:14, 18).*

Mr. Green was assigned to investigate plaintiff's complaint against NSM. *(Green's Dep. p. 10:12).*

Mr. Green testified that he spoke to Chasley Weeks an ex employer of NSM who informed him that she had information regarding NSM. *(Green's Dep. p.17:15).*

5

Mr. Green testified that plaintiff's statement regarding the fraudulent act of NSM were the same as the statement provided to him by Ms. Weeks. *(Green, Dep. p. 20:21, 23).*

Mr. Green testified that he did not think that plaintiff was a liar. *(Green's Dep. p. 24:4).*

Mr. Green testified in response to the Q. "You have two complainants. You have Chaseley Weeks, former employee, said something is going on. Then you have Elizabeth Horton, a former employee, saying something was going on. What was your gut feeling?

. . .

A. My only gut feeling was, is they contacted with a complaint, as do many other people. When I receive a complaint, I assume that the people that are calling believe that their complaint is legitimate; and I look into it from that basis until I prove or disprove. So my gut feeling was, is that they believe that they had something that they should notify us about. I received the information; I looked into it until I was satisfied that there was nothing there. " *(Green's Dep. p. 38:17, 16, p.39:1).*

Mr. Green testified that Ms. Barrow provided him with example of assessments by NSM that did not contain dates. *(Green's Dep. p. 40:17).*

Mr. Green testified that plaintiff did not express to him any maliciousness toward NSM. *(Green's Dep. p. 54:19, 55:1).*

Finally the Plaintiff left NSM and Kelly Services due to her being hired by EDS (See Plaintiff Exhibit B). As the defendants are aware, she testified at depositions that she left Kelly Services jobs were temporary and that she had found a permanent job with EDS. Plaintiff's start date with EDS was July 2004.

ARGUMENT

Defendant is not entitled to the protection of qualified immunity because he lacked probable cause and arguable probable cause to have plaintiff arrested for filing or cause to be filed a false report to law enforcement authorities nor the state agent immunity protects him.

In analyzing a claim subject to a qualified immunity defense, if the official was acting within the scope of his or her discretionary authority, which is not in dispute here, the plaintiff must show the official's conduct violated clearly established law. *Rich v. Dollar*, 841 F.2d 1558, 1562 (11th Cir. 1998). Whether a plaintiff has established a violation of clearly established law is analyzed in two steps. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer,* 536 U.S. 730, 736 (2002) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.' " *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Saucier, 533 U.S. at 201).

*1. The Constitutional Violation.*

The probable cause standard is well-established:

Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstances. *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " Id. (quoting *Williamson v. Mills*, 65 F.3d 155,158 (11th Cir. 1995)).

7

In *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004), the Court also addressed the effect of a deficient investigation on probable cause in the context of a motion for judgment as a matter of law. The court stated that, "objectively, officers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they [choose] to focus upon." Id. at 1228. *Kingsland* involved an alleged false arrest on a DUI charge following an automobile accident between the plaintiff and a police officer. In reversing the district court's order granting summary judgment, the court concluded as follows:

"We recognize, however, that a police officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir.1997).

"Nevertheless, an officer may not choose to ignore information that has been offered to him or her, such as Kingsland's assertions that she was injured and that Officer De Armas ran the red light. Nor may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts, such as whether there was cannabis in the truck or whether witnesses were available to attest to who was at fault in the accident.

...

"The parties dispute the conduct of the defendants leading up to Kingsland's arrest. Under Kingsland's version of the events, the defendants did not act in an objectively reasonable manner under the totality of the circumstances. It was within the officers' knowledge that Kingsland was involved in an accident, was injured and crying, and faulted Officer De Armas. It may also have been within the officers' knowledge that no evidence of drug use existed in Kingsland's truck or on her person. Yet, Kingsland has come forward with some evidence here that the defendants chose to either ignore or misrepresent those facts, which, if true, makes the information on which they based their arrest less than "reasonably trustworthy" under the circumstances.

"Because we find that there are genuine issues of material fact as to whether the defendants (1) manufactured probable cause, (2) failed to conduct a reasonable investigation, and (3) ignored certain facts within their knowledge, we cannot conclude as a matter of law that probable cause existed to arrest Kingsland. Thus, viewing the evidence in the light most

favorable to the plaintiff, summary judgment is inappropriate on the merits of the false arrest claim.

Of course, in evaluating probable cause, it is important to understand the underlying criminal law, as whether there is probable cause depends on the elements of the crime. See *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).

Section 13A-10-9, Code of Alabama 1975, the Alabama false reporting to law enforcement authorities statute reads as follow:

"(a) A person commits the crime of false reporting to law enforcement authorities if he knowingly makes a false report or causes the transmission of a false report to law enforcement authorities of a crime or relating to a crime.

"(b) False reporting to law enforcement authorities is a Class A misdemeanor."

The commentary to Section 13A-10-9, Code of Alabama 1975 states that "the section is based on the Model Penal Code § 241.5 and Michigan Revised Criminal Code § 4540. The section requires that the defendant know that the report is false, Also the defendant's culpable mental state must have been to knowingly cause the transmission of the false report to the law enforcement authorities." Therefore to violate the statute, the transmission of a report of a crime to law enforcement authorities is not enough. Mere reporting an activity thought to be a crime and later found not to be a crime is not enough.

Here there was no evidence offered by Defendant Shockley that plaintiff knew the report was false or that plaintiff's culpable mental state must have been to knowingly cause the transmission of the false report to the law enforcement authorities. Special Investigator Green's deposition is most striking in that after the investigation of the report he did not recommend that any action be taken against plaintiff. The undisputed fact is that Mr. Green testified that he did

not think that plaintiff was a liar. *(Green, Dep. p, 9, 13, p. 24:5)*. Mr. Green also testified that plaintiff did not express to him any maliciousness toward NSM *(Green's Dep. p. 54:19, 55:1)*. These facts negate the "knowingly" element of Section 13A-10-9.

As to the falsity of the report by plaintiff consider the testimony of the Chief Investigator Johnson for the Alabama Medicaid Agency was asked in a deposition "Now, I'm just asking you as an investigator. If you got National Seating & Mobility, know that they need dates, then you have a physical therapist consistently submitting assessments or prescriptions without dates, then you have your Medicaid employee, Felecia Barrow, receiving information, how can any report that Felecia Barrow gave be fraudulent? "His response of "It can't be." is telling. *(Johnson's Dep. at p. 39:21, p. 40:1)*. Thus another element of Section 13A-10-9, "makes a false report or causes the transmission of a false report" falls by the wayside.

Here, first and foremost, a reasonable jury could conclude plaintiff did not knowingly made a false report or causes the transmission of a false report and that Defendant Shockley could not have reasonably believed plaintiff knowingly violated Section 13A-10-9.

*2. The Constitutional Right Was Clearly Established.*

Having shown a reasonable jury could find a constitutional violation, the next question is whether the constitutional right was clearly established at the time of the violation. The touchstone is whether the public official had fair warning his conduct was not lawful. *Hope*, 536 U.S. at 740-41; *Vinyard*, 311 F.3d at 1350. Fair warning can be given first by "the words of the pertinent federal statute or federal constitutional provision" at issue. Id. Second, broad statements of principle in case law that are not tied to particularized facts "can clearly establish law applicable in the future to different sets of detailed facts." Id. at 1351. Third, if there is "no case

10

law with a broad holding of 'X' that is not tied to particularized facts, [courts] look at precedent that is tied to the facts." Id. (emphasis in original).

In *Vineyard*, the Eleventh Circuit discussed the impact of *Hope* on its qualified immunity jurisprudence. The *Vinyard* court recognized, as the court in *Hope* stated, that the touchstone is whether a public official has fair warning his conduct was not lawful. 311 F.3d at 1350. Fair warning can be given first by "the words of the pertinent federal statute or federal constitutional provision" at issue. Id. Second, broad statements of principle in case law that are not tied to particularized facts "can clearly establish law applicable in the future to different sets of detailed facts." Id. at 1351. Third, if there is "no case law with a broad holding of 'X' that is not tied to particularized facts, [courts] look at precedent that is tied to the facts." Id. (emphasis in original).

The right not to be arrested without probable cause has long been clearly established. *Kingsland*, 382 F.2d at 1232. Similarly, it has long been established that "[a]n arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin*, 133 F.3d at 1435 (citing Tillman). Nevertheless, Defendant Shockley is entitled to qualified immunity even in the absence of probable cause to arrest so long as he had "arguable probable cause." Id. at 1232.

This principle is of no help to defendant, as under *Kingsland*, the issues of fact that exist regarding plaintiff's alleged knowingly making a false report to a law enforcement officer makes the case one for the jury:

Nevertheless, officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest. *Jones v. Cannon*, 174 F.3d 1271,

11

1283 (11th Cir. 1999). Accordingly, we must inquire whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff...." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). Kingsland must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances. See, *Storck [v. City of Coral Springs]*, 354 F.3d [1307,] 1313 [(11th Cir. 2003)]. In this case, it defies belief that a charge would have been brought against plaintiff if she had not been painted as a disgruntled employee by defendant Williams. Based on the foregoing, we submit that the nexus/joint action test is applicable to this case. In addition we submit that there is evidence of a symbiotic relationship between, defendants Shockley and Williams in that they both wanted to punish plaintiff. There is no evidence that Shockley conducted an in depth investigation as to the nature of plaintiff's departure from the employment agency that assigned her to NSM. Williams had an interested in defeating the allegation of fraud. What of defendant Williams' motive for his allegation concerning plaintiff? Was he protecting himself, his wife, and NSM? In the instant case, Shockley knew or should have known that defendant Williams was potentially biased and had reasons to fabricate, but he conducted no investigation into the truth or falsity of Williams' allegations against the plaintiff. Therefore it would be is impracticable to conclude that arguable probable cause existed for plaintiffs' arrest when it is unclear how much of the proffered evidence tending to support a finding of arguable probable cause was manufactured or misrepresented, or what further knowledge, if any, would be attributed to defendants if he had investigated reasonably.

Did defendant investigate the motive of plaintiff for making the statement regarding NSM? She was not a disgruntled employee in that Plaintiff was assigned to NSM through Kelly Services and could have easily been reassigned to another company. He could have interviewed

12

the agency that assigned her to work at NSM; however, the record is silent of such an investigation.

The Alabama false reporting to law enforcement authorities statute and well-established Alabama case law interpreting it make clear the statute requires two elements for a person to have violated the statute. The statute and case law require that a person "knowingly makes a false report or causes the transmission of a false report to law enforcement authorities" Taking the facts in the light most favorable to Defendant Shockley, no reasonable officer could believe there was probable cause, as Defendant Shockley who access to the investigation conducted by Special Agent Green and others that some of the information provided by plaintiff was the same as the findings of Ms. Barrow, an employee of the Alabama Medicaid Agency who testified that the information reported by plaintiff regarding posting of dates was the same as the information that she had "witnessed firsthand". (Barrow's Dep. at p. 42:10-13). Secondly, plaintiff in her affidavit averred that she believed that the information she reported was true. *(Elizabeth Horton, Aff. 11)* Thirdly, plaintiff was found not guilty of the charge by a trial court that had the opportunity to observe her demeanor and that of Defendant Shockley. Fourth and finally, retired special agent Michael Roeder apologized to plaintiff after she was acquitted of the charge of filing a false report with a law enforcement agency. *(Elizabeth Horton, Aff. 10)* He further informed plaintiff that defendant Shockley was upset with her because she did not meet with him for an interview. Plaintiff must submit that Ms. Weeks made a statement concerning fraudulent activity committed by NSM to Investigator Weeks and she was not arrested. Accordingly, plaintiff is entitled to an Order denying Defendant Shockley's Motion for Summary Judgment.

CONCLUSION

13

      For the above stated reasons, the Court should deny Defendant Shockley's Motion for Summary Judgment.

      RESPECTFULLY SUBMITTED on this the 13th day of March, 2008.

/s/ Deborah M. Nickson
Deborah M. Nickson

OF COUNSEL
Deborah M. Nickson
2820 Fairlane Drive Suite A-10
Montgomery, AL 36116
334-213-1233

14

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CERTIFICATE OF SERVICE

I, Deborah M. Nickson, do hereby certify that a true and correct copy of the foregoing Plaintiff's Brief Opposing Motion For Summary Judgment Submitted By Defendant Shockley has been served on all counsel and parties of record, by mailing a copy of the same in the U.S. Mail, envelope properly addressed and postage prepaid on this 13th day of March, 2008.

Deborah M. Nickson
Attorney for Plaintiff
2820 Fairlane Dr. Ste A-10
Montgomery, AL 36116
334-213-1233

Hon. Charles A. Stewart, III
Bradley, Arant, Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Ste. 780
Montgomery, AL. 36104
Cstewart@bradleyarant.com

Hon. Jack W. Wallace, Jr.
Office of the Attorney General
11 South Union Street
Montgomery, AL. 36130
JWallace@ago.state.al.us

Hon. Kelly Pate,
Hon. Dorman Walker
Balch & Bingham LLP
P.O. Box 78
Montgomery, AL. 36101
DWALKER@balch.com
kpate@balch.com

Hon. Quindal C. Evans
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Ave., Suite 780
Montgomery, Al 36104
qevans@bradleyarant.com