THE STATE OF TEXAS
Tarrant _____ COUNTY

KATHLEEN AFFIDAVIT SHANNON'S

Before me, ~~Elizabeth Horton~~, a Notary Public in and for said County in said State, personally appeared Elizabeth Horton whose name is signed to this Affidavit and who is known to me, and who being by me first duly sworn deposes and says as follows:

1.  That my name is Elizabeth Horton, and I reside in Montgomery County, Alabama, and I am over the age of 19 years.

2. I was employed for approximately two months through Kelly Services as a temporary employee assigned to work at a place of business operated by National Seating and Mobility, Inc., and because of that fact I was seeking permanent employment with other businesses that offered better opportunities.

3. Before and during my assignment to work at National Seating and Mobility, Inc., I understood that my employment was purely temporary; therefore I had no expectation that the employment would be made permanent.

4. The office of National Seating and Mobility, Inc., where I worked was managed by Mrs. Emily Williams and her husband, Don William was employed as a technician there.

5. During my short tenure with National Seating and Mobility, Inc., it became readily apparent that Don Williams had great influence at the office.

6. During the course of my employment with National Seating and Mobility, Inc., I came to know Felicia Barrow who was I learned employed with the Alabama Medicaid Agency.

7. I did not then nor do I now consider Ms. Barrow a friend.

8. During the course of my employment with National Seating and Mobility, Inc., NSM was interested only in profits not how its employees arrived at the profits.

9. I was not informed that my job performance at NSM was unsatisfactory to the extent that it could cause a problem with an agency that regulated NSM.

10. Retired special agent Michael Roeder apologized to me after I was acquitted on the charge of filing a false report with a law enforcement agency. He further informed me that defendant Shockley was upset with me because I did not meet with him for an interview.

11. I believed that the information I provided to the Alabama Medicaid Agency was true.

Further, Affiant saith not.

_____
Elizabeth Horton, Affiant

Sworn and subscribed to before me on this the ___11th___ day of ___March___, 2008.

_____
Notary Public

KATHLEEN M. SHANNON
MY COMMISSION EXPIRES
February 6, 2010

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Felecia Barrow Deposition

Page 7

1       for Medicaid?

2   A.  From 1999 until 2005.

3   Q.  And what was your position there?

4   A.  I held several positions.  Do you want

5       all of those in . . .

6   Q.  Yes, ma'am.

7   A.  Okay.  I was a Medicaid Administrator I

8       with the medical services division in

9       1999.  In 2001, I became the associate

10      director in the long-term care

11      division.  And in 2003, I moved to the

12      prior approval unit, which was within

13      the medical director's office, where I

14      was associate director.

15  Q.  All right.  And why did you leave the

16      Medicaid Agency?

17  A.  Oh, I left because of a better job

18      opportunity.

19  Q.  All right.  More money?

20  A.  Yes.  Yes.

21  Q.  And during your employment with the

22      Medicaid Agency, did you address any

23      concerns regarding infractions or

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

Felecia Barrow Deposition

Page 24

```
 1          vendor that we would come in contact

 2          with on a, you know, continuous basis.

 3     Q.   If someone told an investigator that

 4          you and Ms. Horton were friends, would

 5          they be lying?

 6                    MR. WALKER:   Object to the

 7                    form.

 8     A.   I would not consider us friends.

 9          Acquaintances perhaps, simply because

10          of the nature of dealing with one

11          another on a daily basis.

12     Q.   So you knew her in the professional

13          capacity?

14     A.   Yes.

15     Q.   Did you ever attend a concert with her?

16     A.   No, I didn't.  She had informed me that

17          there was a concert that was happening

18          in the city.  And she did not attend

19          the concert; however, I did, with a

20          friend of mine.

21     Q.   What was your understanding of Don

22          Williams' position with National

23          Seating & Mobility at that time?
```

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services

Page 26

```
1        Chaseley prior to Elizabeth coming on
2        board, I believe.
3   Q.   Did Chaseley make any complaints or
4        talk about any infractions --
5   A.   Not to me.
6                MR. WALKER:  Object to the
7                form.
8   Q.   Have you ever been told that anybody
9        stated that Emily Williams advised one
10       of the physical therapists not to place
11       dates on prescriptions?
12               MR. STEWART:  Object to the
13               form.
14               MR. WALKER:  Object to the
15               form.
16  A.   I believe that we did get a phone call
17       from a therapist.  One of my staff
18       members, one of my nurse reviewers, had
19       received a phone call and we were
20       questioning the date.  She questioned
21       the date being missing.  And he
22       informed her that they were told not to
23       put dates on the forms.
```

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

Page 28

1            would look at the attachments to

2            Plaintiff's Exhibit #6.

3                      (Brief pause while witness

4                      reviews document)

5     A.    Okay.

6     Q.    Now, in your memo -- and I'll just

7            reference Plaintiff's Exhibit #6 --

8            your first statement in paragraph 1,

9            you say, Please find attached exhibits

10           of wheelchair assessments that have

11           been submitted by National Seating &

12           Mobility-Montgomery that were missing

13           the clinic dates.  And I'm going to

14           show you once again the attachments to

15           Plaintiff's Exhibit #6, which is your

16           memo dated February 16, 2005.  Now, is

17           this an example --

18    A.    Yes.

19    Q.    -- of clinic dates missing?

20    A.    Yes.

21    Q.    Is this a violation of the policy?

22                      MR. STEWART:  Object to

23                      form.

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 32

1    A.   That the vendor, National Seating &

2         Mobility, would be able to hold a

3         request for an unlimited period of time

4         and still submit it to the Medicaid

5         Agency without us being able to verify

6         the date in which the assessment was

7         actually done.

8    Q.   And is this what you all consider as

9         fraudulent activity?

10                  MR. STEWART:  Object to the

11                       form.

12   A.   We consider --

13                  MR. WALKER:  Object to the

14                       form.

15   A.   I would say that it was inappropriate

16        in order for them to leave off dates.

17        It goes against policy.

18   Q.   All right.  Now, Plaintiff's

19        Exhibit #6, the memo states that two of

20        the assessments were conducted by Gerry

21        Rodgers, of physical therapy, and one

22        of Michael Maddox, RPT, both of

23        Children's Rehab Services.  Okay?

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Felecia Barrow Deposition

Page 33

1          Teresa Surles, a registered nurse,

2      questioned the assessments and was told

3      by Gerry Rodgers to get the dates from

4      Emily at National Seating.  Now, is it

5      appropriate for Emily at National

6      Seating to give dates to place --

7              MR. STEWART:  Object to

8                  form.

9      Q.  -- for clinic dates?

10              MR. WALKER:  Object to the

11                  form.

12              MR. STEWART:  Object to

13                  form.

14      A.  As I understood it, Emily was the

15      person who would be working along with

16      the PT in clinic with the client.  So

17      it would be appropriate for her to

18      provide a date.

19      Q.  So this Children's Rehabilitation

20      Service report of visit, would Emily

21      provide a date for this visit?

22      A.  Yes, it would be appropriate for her to

23      do so.

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Felecia Barrow Deposition

Page 35

1              MR. STEWART:  Object to the

2                 form.

3              MR. WALKER:  Object to the

4                 form.

5      A.   Yes, it is.

6      Q.   Was this one of the complaints that

7           Elizabeth had against the company,

8           failure for them to place dates?

9              MR. STEWART:  Object to the

10                form.

11     A.   I do recall her mentioning that there

12          were dates missing from forms.

13     Q.   Did she ever tell you that they wanted

14          her to fill in some of these dates?

15              MR. STEWART:  Object to

16                form.

17     A.   I don't recall if they were clinic

18          dates that they wanted her to fill in.

19     Q.   But do you recall her saying they

20          wanted her to fill in any dates --

21     A.   Yes.

22     Q.   -- on any of the forms?

23     A.   Yes.

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services          **Felecia Barrow Deposition**

Page 37

```
 1        dating the delivery tickets?
 2                    MR. WALKER:  Object to the
 3                        form.
 4                    MR. STEWART:  Object to the
 5                        form.
 6     A.  If a vendor does not put a date or have
 7         the client date a delivery ticket, it
 8         basically does not give the Medicaid
 9         Agency any indication that the
10         equipment was delivered in the time
11         frame allowed by policy.
12     Q.  And failure to deliver the equipment in
13         a timely manner, what would be the
14         adverse consequence?
15                    MR. STEWART:  Object to the
16                        form.
17     A.  It goes against policy.  And that would
18         have been left up to the directors at
19         the agency as to what the consequence
20         would be.
21     Q.  All right.  Now, to continue reading in
22         the second paragraph for Plaintiff's
23         Exhibit #6, it says, Subsequent fax was
```

Page 40

1           MR. STEWART:  Object to

2                 form.

3           MR. WALKER:  Object to the

4                 form.

5   A.  Yes, because it goes against policy.

6   Q.  And is it misleading the --

7           MR. STEWART:  Object to the

8                 form.

9           MR. WALKER:  Object to the

10                 form.  Sorry.  Go ahead.

11  Q.  Is it misleading the Medicaid Agency?

12          MR. WALKER:  Object to the

13                 form.

14          MR. STEWART:  Object to the

15                 form.

16  A.  Yes.

17  Q.  And, actually, is it fair to say that

18      it's fraud?

19          MR. WALKER:  Object to the

20                 form.

21          MR. STEWART:  Object to the

22                 form.

23  A.  Yes.

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services     Felecia Barrow Deposition

Page 42

1    Q.    Who told you that?

2    A.    Mr. Rodgers.

3    Q.    Now, this last sentence in paragraph --

4          in the third paragraph, Plaintiff's

5          Exhibit #6, you said, This was the same

6          information that was reported by former

7          National Seating employee, Elizabeth

8          Horton.

9    A.    Yes.

10   Q.    So Elizabeth Horton had reported the

11         same information that you witnessed

12         firsthand.

13   A.    Yes.

14   Q.    So based on what Ms. Horton had

15         reported and what you had reviewed, did

16         you request an investigation?

17   A.    Yes, I did.

18   Q.    Now, I'm going to show you what we'll

19         mark as Plaintiff's Exhibit #8.

20                    (Plaintiff's Exhibit #8 was

21                     marked for identification.)

22                MR. WALKER:  I'm sorry,

23                     Deborah.  Which exhibit

**MERRILL LEGAL SOULTIONS**
**Court Reporting*Legal Videography*Trial Services**

**Felecia Barrow Deposition**

Page 44

```
 1        billing activities.
 2   Q.   And failure to put in dates, would that
 3        be connected to the billings?
 4                  MR. STEWART:  Object to the
 5                  form.
 6   A.   That would be connected to billing.
 7   Q.   All right.  So if they manipulate
 8        dates -- if National Seating &
 9        Mobility, Don Williams, Emily Williams,
10        were manipulating dates on these clinic
11        dates and the delivery dates, that
12        affects billing --
13   A.   Yes.
14                  MR. STEWART:  Object to the
15                  form.
16                  MR. WALKER:  Object to the
17                  form.
18   Q.   -- and would amount to fraudulent
19        billing practices?
20                  MR. WALKER:  Object to the
21                  form.
22                  MR. STEWART:  Object to the
23                  form.
```

Page 25

```
1         They was asking her questions on the
2         line as what information did she
3         receive regarding National Seating &
4         Mobility and -- regarding them not
5         having provided services or supplies to
6         Medicaid recipients regarding
7         wheelchairs.  So all the exact details,
8         I don't remember.  I don't recall.
9    Q.   Do you remember Felecia saying anything
10        about she had documentation to support
11        the fact that they did have missing
12        dates on some of their documents?
13   A.   I would have to say yes.
14                  MR. STEWART:  Object to
15                  form.
16   A.   Yes, ma'am.
17   Q.   Do you remember her discussing
18        infractions at National Seating &
19        Mobility submitted to her department?
20                  MR. STEWART:  Object to
21                  form.
22   A.   I'm trying to understand the question.
23   Q.   Such as missing dates on forms.
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Clifford Johnson Deposition

Page 26

```
 1                    MR. STEWART:  Same

 2                    objection.

 3     A.   Yes.

 4     Q.   What, if anything, did she say?

 5     A.   Again, I would have to say something on

 6          the line where she would say they

 7          received forms or documentation from

 8          the company where certain dates were

 9          not on the form for -- I guess missing

10          dates or . . .

11     Q.   And was that part of Elizabeth Horton's

12          complaint as you understood it?

13     A.   Yes, ma'am.  I would say so, yes.

14     Q.   And did Ms. Barrow say that she had

15          personal knowledge or just received

16          information in her office of the same?

17     A.   Yes.

18     Q.   Investigator Green did the

19          investigation at the office of National

20          Seating & Mobility here in Montgomery.

21          You reviewed his complaint where you

22          said he didn't find any criminal

23          activity.
```

Page 30

1       corrections are made, then the

2       investigator has no other choice but to

3       conclude no criminal activity?

4                       MR. WALKER:  Objection to

5                       form.

6                       MR. STEWART:  Object to

7                       form.

8   A.  Yes, ma'am.

9   Q.  All right.  Let me show you Plaintiff's

10      Exhibit #3, Bates Drab Page 14.  If you

11      would, let us look at Paragraph No. 2.

12      Could you read that for the record,

13      please.

14  A.  Teresa Surles, RN, questioned the

15      assessment and was told by Gerry

16      Rodgers to get the dates from Emily,

17      National Seating.  I informed Teresa

18      that the clinic dates should be kept at

19      CRS where the assessment was conducted.

20      Teresa, under my direction, contacted

21      CRS to get the clinic dates instead of

22      Emily.  Jackie, CRS, informed Teresa

23      that the date of the clinic appointment

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

**Clifford Johnson Deposition**

Page 31

1           was July 20th, 2004.  The PA request

2           was submitted in February 2005.  A

3           subsequent fax was received from Gerry

4           Rodgers indicating that the assessment

5           was reviewed on 2/15/05 and was still

6           okay.  I conferred with Teresa and

7           Debbie and thought that we needed

8           updated clinic notes telling the

9           current condition of the clinic.  On

10          another client, both the physician

11          notes and medical necessity and the PT

12          assessment were lacking dates.

13    Q.    So when they failed to put dates on the

14          assessments, doesn't that alter the

15          system?

16                    MR. STEWART:  Object to the

17                    form.

18                    MR. WALKER:  Object to the

19                    form.

20    Q.    Requirements.

21    A.    Yes, ma'am.

22    Q.    So that's actually where the fraud

23          occurred.  Am I correct?

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

**MERRILL LEGAL SOULTIONS**
Court Reporting*Legal Videography*Trial Services    **Clifford Johnson Deposition**

Page 36

1    Q.    So is it fair to say that this

2          assessment by Teresa Surles questioning

3          the assessments and missing dates,

4          would that pretty much be lining up

5          with the complaint that Elizabeth

6          Horton had?

7                        MR. STEWART:  Object to the

8                        form.

9    A.    Yes, ma'am.

10                       MR. WALKER:  Object to the

11                       form.

12   Q.    Was that a yes, Mr. Johnson?

13                       MR. STEWART:  Object to the

14                       form.

15   A.    Yes.

16   Q.    All right.  Now, if we can read the

17         next paragraph for the record.

18   A.    Teresa came across another assessment

19         completed by M. Maddox and placed a

20         call to the PT to find out why the

21         dates was missing.  The PT replied,

22         Maybe we're not supposed to do this,

23         pause, but I never put dates on the

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Clifford Johnson Deposition

Page 37

```
 1        assessment or the prescription because

 2        it messes up the vendors, like we're on

 3        a time clock.  It is odd that the

 4        assessments that Mr. Maddox has done

 5        for other vendors have a date on them,

 6        but the ones done for National Seating

 7        do not have dates.  This was the same

 8        information that was reported by former

 9        National Seating employee, Elizabeth

10        Horton.

11   Q.   Now, looking at this document, you have

12        the same thing that Elizabeth Horton

13        complained of.  You have a Medicaid

14        Agency employee that's firsthand

15        witness to it.  Am I correct?

16                  MR. STEWART:  Object to

17                  form.

18                  MR. WALKER:  Object to form.

19   A.   That's correct.

20   Q.   All right.  Just based on this memo.

21   A.   Yes.

22   Q.   And this memo is written by whom?

23   A.   Felecia Barrow.
```

2100 3rd Avenue North, Suite 960*Birmingham, AL 35203*www.merrillcorp.com
1-800-888-DEPO

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

**Clifford Johnson Deposition**

Page 39

1                MR. WALKER:   Same.

2   A.   No, ma'am.

3   Q.   Does anybody know what he meant when he

4        said, according to Teresa, that I never

5        put dates on the assessment?

6   A.   No, I don't know.

7   Q.   Did anybody find out what he meant when

8        he said the prescriptions -- or the

9        prescriptions because it messes up the

10       vendor?

11              MR. WALKER:   Object to the

12                  form.

13              MR. STEWART:   Same.

14   A.   And the question is?

15   Q.   Did anybody find out what he meant by

16        that?

17              MR. WALKER:   Same.

18              MR. STEWART:   Same

19                  objection.

20   A.   No, ma'am.

21   Q.   Now, I'm just asking you as an

22        investigator. If you got National

23        Seating & Mobility know that they need

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Clifford Johnson Deposition

Page 40

1      dates, then you have a physical

2      therapist consistently submitting

3      assessments or prescriptions without

4      dates, then you have your Medicaid

5      employee, Felecia Barrow, receiving

6      information, how can any report that

7      Felecia Barrow gave be fraudulent?

8                    MR. STEWART:  Object to

9                         form.

10                   MR. WALKER:  Object to form.

11   Q.   I mean not Felecia but Elizabeth Horton

12        gave be fraudulent?

13                   MR. STEWART:  Same

14                        objection.

15                   MR. WALLACE:  Objection to

16                        form.

17                   MR. WALKER:  Object to the

18                        form.

19   A.   It can't be.

20   Q.   So doesn't this suggest that there was

21        some kind of evidence or there was

22        something going on at National

23        Seating & Mobility?

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services    Anthony Green Deposition

Page 5

1    by either party hereto provided for by

2    the Federal Rules of Civil Procedure.

3

4        *     *     *     *     *     *     *     *

5

6                    ANTHONY L. GREEN

7    The witness, having first been duly

8    sworn or affirmed to speak the truth,

9    the whole truth, and nothing but the

10   truth, testified as follows:

11                    THE REPORTER:  Usual federal

12                    stipulations?

13                    MS. NICKSON:  Yes.

14                    MR. WALKER:  Yes.

15                    EXAMINATION

16   BY MS. NICKSON:

17   Q.   Would you state your name for the

18        record.

19   A.   I'm Special Investigator Anthony L.

20        Green.

21   Q.   Mr. Green, I am Deborah Nickson.  I am

22        a local attorney here in Montgomery and

23        I represent Elizabeth Horton, who is a

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Anthony Green Deposition

Page 7

1                    MR. STEWART:  Object to

2                         form.

3                    MR. WALKER:   Same objection.

4    Q.  You can answer.

5    A.  Yes, I did.

6    Q.  And first let me ask you, you said you

7        are a special investigator.  And with

8        what division?

9    A.  Alabama Medicaid Agency.

10   Q.  How long have you been with the

11       Medicaid Agency?

12   A.  Approximately two and a half years.

13   Q.  Two and a half years?

14   A.  Yes, ma'am.

15   Q.  And what did you do prior to that?

16   A.  Prior to that, I worked for the

17       Veterans Administration as a police

18       officer.  I was lieutenant of

19       operations for Tuskegee University

20       Security Department.  I worked with the

21       New York State Police for twenty-one

22       years, and I was in the military prior

23       to that.

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services    Anthony Green Deposition

Page 8

1    Q.    Yes, sir.  And the various prior

2          employers that you've listed, did you

3          have experience in investigating cases,

4          matters, events?

5    A.    Yes, I did.

6    Q.    And you said that your employment with

7          Medicaid has been two and a half years?

8    A.    Yes, that's correct.

9    Q.    And you are assigned as a special

10         investigator.

11   A.    That's correct.

12   Q.    And as a special investigator, what are

13         your duties and responsibilities?

14   A.    We deal with cases involving Medicaid

15         fraud or suspected Medicaid fraud.

16   Q.    And in your two and a half years with

17         Medicaid, how many cases have you

18         investigated, approximately?

19   A.    I would think that a safe estimate

20         would be about seventy.

21   Q.    About seventy?

22   A.    Yes.

23   Q.    And of the seventy cases, how many have

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Anthony Green Deposition

Page 9

```
 1        been confirmed on the allegations?

 2   A.   I'm going to say 50 percent.

 3   Q.   And for the 50 percent that you were

 4        not able to confirm the allegations,

 5        were any arrests recommended or made as

 6        a result thereof?

 7   A.   I'm sorry.  Repeat that.

 8   Q.   Okay.  For the 50 percent where the

 9        claims or -- the claims of a person

10        alleging fraudulent activity were not

11        substantiated, were arrests the result

12        of it?

13   A.   No.

14   Q.   In your two and a half years with

15        Medicaid, have you ever known of a

16        complainant to be arrested for the

17        complaint not being confirmed?

18   A.   The only case that I'm aware of is the

19        one that I'm presently here for.

20   Q.   And that is Elizabeth Horton?

21   A.   Yes, ma'am.

22   Q.   What, if anything, was different about

23        her complaint, if you know?
```

Page 10

```
1              MR. STEWART:  Object to

2                 form.

3    A.   From my perspective, it was, I would

4         say, a regular complaint.  There was

5         nothing that I can think of that was

6         different from any of the other various

7         complaints we've received.

8    Q.   Let's talk about how you got involved

9         in the case.  How did you get involved

10        with the complaint that was allegedly

11        made by Elizabeth?

12   A.   I received it in the same manner we

13        receive virtually all our cases.  The

14        cases come in and my supervisor, Chief

15        Investigator Cliff Johnson, assigned

16        the case to me.

17   Q.   Yes, sir.  And did he give you a file?

18   A.   Yes, he did.

19   Q.   Do you remember what was contained in

20        the file?

21   A.   There would have been a standard

22        complaint form, which would have

23        contained the basic allegation; the
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 17

1    Q.    Does that mean that there's a prior

2          investigation?

3    A.    Yes.

4    Q.    Okay.

5    A.    And from that point on, it's just

6          information that I came through during

7          the course of my investigation.

8    Q.    All right.  During the course of your

9          investigation, did you talk with a

10         young lady by the name of Chaseley

11         Weeks?

12   A.    Yes, I did.

13   Q.    What, if anything, did Ms. Weeks tell

14         you?

15   A.    I spoke with Ms. Weeks, and basically

16         she informed me that she worked at

17         National Seating & Mobility; she's no

18         longer employed there.  I'd just like

19         to refer back to see exactly what I

20         wrote.

21   Q.    Yes, sir, you can.

22   A.    Okay.  I spoke with Ms. Weeks

23         initially, and she had agreed to meet

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Anthony Green Deposition

Page 20

1       office had also conducted an

2       investigation on this.  I requested a

3       copy of their report; and from there, I

4       went through to see who their

5       complainants and witnesses were, and I

6       attempted to contact individually the

7       same people.  And -- and with finding

8       out that Elizabeth Horton was a

9       complainant in this case, that's pretty

10      much how I came in on her and that's

11      why she was contacted.

12   Q.  And what, if anything, did Elizabeth

13      tell you?

14   A.  I had several conversations with

15      Elizabeth -- should be Ms. Horton.

16      Over the course of our conversations,

17      she advised me that she felt that there

18      were some things going on with National

19      Seating & Mobility that she felt may

20      have been fraudulent.

21   Q.  So her statements were pretty much one

22      and the same as Chaseley Weeks'?

23   A.  Yes.

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 24

1              form.

2                    MR. WALKER:   Object to the

3                    form.

4   A.   My opinion of Ms. Horton was that she

5        had information that she thought and

6        she suspected that something was going

7        on that wasn't correct or appropriate.

8        Do I think she was a liar?  From my --

9        my time with her, no, I don't think she

10       was lying to me.  But I will say that

11       one of the problems I did have with

12       Ms. Horton was after -- actually, she

13       was very, very, very, very difficult to

14       get in touch with, which made it very

15       difficult to follow up on some of the

16       information to keep the investigation

17       going.  I believe that she believed

18       something was going on, but I don't

19       believe that she was as cooperative as

20       she could have been and possibly as she

21       should have been.

22  Q.   Did she give the impression that she

23       didn't want to get involved?

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services
Anthony Green Deposition

Page 38

1              MR. STEWART:  Object to the

2                  form.

3    A.  My gut feeling?

4    Q.  Uh-huh.

5              MR. WALKER:  Object to the

6                  form.

7    Q.  You have two complainants.  You have

8        Chaseley Weeks, former employee, said

9        something is going on.  Then you have

10       Elizabeth Horton, a former employee,

11       saying something was going on.  What

12       was your gut feeling?

13             MR. STEWART:  Object to the

14                 form.

15             MR. WALKER:  Same objection.

16   A.  My only gut feeling was, is they

17       contacted with a complaint, as do many

18       other people.  When I receive a

19       complaint, I assume that the people

20       that are calling believe that their

21       complaint is legitimate; and I look

22       into it from that basis until I prove

23       or disprove.  So my gut feeling was, is

Anthony Green Deposition

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Page 39

```
 1         that they believe that they had

 2         something that they should notify us

 3         about.  I received the information; I

 4         looked into it until I was satisfied

 5         that there was nothing there.

 6    Q.   Okay.  I'm going to show you this

 7         document, and this will be Bates

 8         Drab 14.  Would you identify this

 9         document for the record, please?

10    A.   This is a document that was generated

11         by the Alabama Medicaid Agency

12         February 16th of 2005.  This is a

13         memorandum from Dr. McIntyre, who's

14         medical director for the Medicaid

15         Agency.

16    Q.   All right.  If you would, just read

17         that first sentence for the record for

18         me, please.

19    A.   Where it says --

20              MR. WALKER:  It's from

21                   Felecia Barrow, is who

22                   it's to.

23    Q.   Okay.  The memorandum is to whom?
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Anthony Green Deposition

Page 40

```
1    A.   The memorandum is to -- I'm sorry.  The

2         memorandum is to Dr. McIntyre and it's

3         from Ms. Barrow.

4    Q.   And who is Dr. McIntyre?

5    A.   Dr. McIntyre is the medical director at

6         Medicaid.

7    Q.   And Felecia Barrow, who is she?

8    A.   She's a former employee of Medicaid.

9         She was the associate director for the

10        prior approval unit.

11   Q.   And she's writing this memorandum in

12        reference to?

13   A.   Issues with wheelchair assessments

14        received.

15   Q.   Now, in the first paragraph, what does

16        she state?

17   A.   It's just saying that -- she's saying,

18        Please find an example of wheelchair

19        assessments that have been submitted by

20        National Seating & Mobility in

21        Montgomery that were missing client

22        dates.

23   Q.   Clinic dates.
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services    Anthony Green Deposition

Page 54

```
1        way that Elizabeth had a malicious

2        intent to harm National Seating &

3        Mobility, Don Williams, or Emily

4        Williams?

5                    MR. WALKER:  Object to the

6                        form.

7                    MR. STEWART:  Object to the

8                        form.

9    A.  I don't know what her intent was.  The

10       only thing I knew is that she had a

11       complaint and I just investigated the

12       complaint.

13   Q.  But she was like a normal complainant?

14                   MR. STEWART:  Object to the

15                       form.

16                   MR. WALKER:  Object to the

17                       form.

18   A.  Yes.

19   Q.  Did she ever express maliciousness?

20                   MR. STEWART:  Object to the

21                       form.

22                   MR. WALKER:  Object to the

23                       form.
```

MERRILL LEGAL SOULTIONS
Court Reporting*Legal Videography*Trial Services

Anthony Green Deposition

Page 55

1    A.   Not to me, no.

2                  MS. NICKSON:  All right.  No

3                  further questions.

4                  EXAMINATION

5    BY MR. WALKER:

6    Q.   Let me ask you a question, please, sir.

7         If you would look at Exhibit #1 and,

8         particularly, if you would look at

9         page 2 and if you would read the

10        paragraph, summary of fraudulent

11        activity.

12   A.   On June 1st, 2006, I met with Ms. Emily

13        Williams -- if I can skip the

14        abbreviations there -- with National

15        Seating & Mobility, 646 Oliver Road,

16        Montgomery, Alabama, and Tim Maddox of

17        National Seating & Mobility, 377

18        Riverside Drive, Suite 300, Franklin,

19        Tennessee, and reviewed -- and reviewed

20        the requested files.  A review of these

21        files revealed no signs of any criminal

22        activity or wrongdoing.  At no time did

23        this investigation reveal any signs of



