**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| ELizabeth HORTON )<br> )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>DON WILLIAMS, individually and in his )<br>capacity as the Manager of National )<br>Seating and Mobility, Inc., NATIONAL )<br>SEATING AND MOBILITY, INC., )<br>GERALD SHOCKLEY, individually, )<br> )<br>   Defendants. )<br> )<br> ) | CIVIL ACTION NUMBER:<br>2:06-cv-526-MHT-TFM |

**ORDER ON PRETRIAL HEARING**

A pretrial hearing was held in this case on May 19, 2008, wherein the following proceedings were held and actions taken:

**1.   PARTIES AND TRIAL COUNSEL:**

**COUNSEL APPEARING AT PRETRIAL HEARING:**

The following counsel were present at the pretrial hearing and will also be serving as trial counsel for the parties.

   Counsel for Plaintiff:          Deborah M. Nickson

   Counsel for Defendant
   Don Williams:                Dorman Walker, Balch & Bingham, LLP

   Counsel for Defendant       Charles A. Stewart III and Quindal C. Evans, Bradley
   National Seating & Mobility   Arant Rose & White, LLP

   Counsel for Defendant       Jack W. Wallace, Jr., Office of the Attorney General,
   Gerald Shockley             Montgomery, Alabama

2. **JURISDICTION AND VENUE:**

Jurisdiction and venue are admitted. Plaintiff has filed her Complaint under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, 42 U.S.C. § 1983, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 2201, 28 U.S.C. § 2202 and the doctrine of supplemental jurisdictional to obtain declaratory relief and compensatory and punitive damages.

The violations of which Plaintiff complaints are alleged to have occurred in Montgomery County, Alabama, which is within the Northern Division of the Middle District of Alabama.

Plaintiff, Elizabeth Horton, (hereinafter, Plaintiff) is over the age of 19 years, and is and at all times material hereto was a citizen of the United States and the State of Alabama, residing in Montgomery County, Alabama.

Defendant, Don Williams, was at all times pertinent hereto an employee in the office of National Seating and Mobility, Inc., located in Montgomery County, Alabama.

Defendant, National Seating and Mobility, Inc., is a corporation doing business in the State of Alabama with a location in Montgomery County, Alabama.

Defendant, Gerald Shockley, was at all times pertinent hereto employed as an investigator with the Alabama Attorney General's Office.

    3. **PLEADINGS**:   The following pleadings and amendments were allowed:

        a. An Amended Complaint relating to Plaintiff's claim against defendant Shockley insofar as the Fourteenth Amendment is invoked as incorporating the Fourth Amendment against a state defendant; Plaintiff Horton's claims against defendant Shockley in his individual capacity; and the Amended Complaint as amended as it relates to Defendants, Don Williams and National Seating and Mobility, Inc.
        b. National Seating and Mobility, Inc.'s Answer to the Amended Complaint
        c. Don Williams's Answer to the Amended Complaint
        d. Gerald Shockley's Answer to the Amended Complaint

  e. Pending Motion for Summary Judgment filed by Defendants National Seating and Mobility, Inc. and Don Williams

  f. Pending Motion for Summary Judgment filed by Defendant Gerald Shockley

**4.** **CONTENTIONS OF THE PARTIES:**

 **(a)** **The Plaintiff:**

1. Plaintiff was employed at National Seating and Mobility, Inc., office in Montgomery, Alabama from March 26, 2004 until June 26, 2004 and one of her duties were to assured that all orders for wheel chairs and accessories received by defendant Don Williams was correct before mailing the orders to the Alabama Medicaid Agency for prior approval.
2. It was the policy of the Alabama Medicaid Agency that in order to obtain prior approval from the Agency all documents required a date, medical necessity information, a prescription, an evaluation form completed by a doctor to assure that the recipient receive their equipment within 60 day guidelines.
3. The consequences of not properly obtaining the required information from an applicant would result in the applicant having to resubmit an application, and cause a delay in payment to defendant National Seating & Mobility, Inc. of up to six months to a year which in return would cause defendant Don and Emily Williams to fail to meet a monthly quota required by defendant, National Seating & Mobility, Inc.
4. Plaintiff became aware of several orders that did not have the required information and she informed defendant Don Williams and his wife of the missing information, and therefore she could not verify to the Alabama Medicaid Agency whether the recipient would receive his or her equipment within the 60 day deadline.
5. Plaintiff was instructed by Emily Williams and Defendant Don Williams to place a date on the documents, which she refused to do so because it would be a fraudulent act.
6. Plaintiff became aware that the dates on the application were being falsified whereupon she reported this fact to the Director of Prior Approval Department with the Alabama Medicaid Agency, and to the best of her knowledge this information was reported to defendant Gerald Shockley.
7. On or about April 15, 2005, she was interviewed by an investigator with the Alabama Medicaid Agency who to the best of her knowledge reported the results of his investigation to defendant Gerald Shockley.
8. Defendant Williams was questioned, and he accused her of lying because her employment with National Sating & Mobility, Inc. was terminated.
9. Plaintiff avers she was not terminated from National Seating and Mobility, Inc but that she was on the payroll of a temporary agency, Kelly Service, who assigned her to National Seating and Mobility.
10. The Felecia Barrow, Director of Prior Approval Department within the Alabama

      Medicaid Agency, was questioned by defendants Shockley in July 2005 regarding Defendant Don Williams' statement, and the director provided defendant Shockley with evidence to prove that plaintiff was truthful regarding the false dates on the application and testified to the same at her depositions.

11. Plaintiff avers that on August 2, 2005 defendant Shockley caused a warrant to be issued for her arrest on the charge of furnishing a false report to a law enforcement officer. To date, no one has been able to provide a report furnished by Ms. Horton.
12. Plaintiff avers that on or about August 5, 2005 five Deputy Sherriff officers from the Montgomery Sheriff's Department went to her place of employment to make an arrested her. This cause the Plaintiff embarrassment and humiliation in the workplace.
13. Plaintiff avers that she was later taken into custody on or about August 5, 2005 and released on August 6, 2005 after posting bail.
14. Plaintiff avers that a trial was held on September 26, 2005 in the Montgomery County District Court where she was acquitted after the Judge heard the testimony of Defendant Gerald Shockley who admitted that he did not have a report furnished by Horton. He could not present a report because no report ever existed. Plaintiff has never filed a Qui Tam with the State Attorney General's office. The Attorney General's office contacted the Plaintiff regarding National Seating and Mobility, Inc.
15. Plaintiff avers that she has a protectible interest in her freedom. She further had a right under the Fourth Amendment to the United States Constitution to be secure in her person, house, papers and effects, against unreasonable searches and seizures.
16. Plaintiff avers that defendant Shockley caused her to be detained and arrested without probable cause, when the evidence was clear that she had not committed a criminal offence.
17. Plaintiff avers that the aforesaid conduct of Defendant Shockley proximately caused damages to her in that she suffered pain, suffering, embarrassment, humiliation, extreme mental anguish, and severe emotional distress, loss of time, and loss of income.
18. A consequence of not properly obtaining the required information from an applicant would result in the applicant having to resubmit an application, and cause a delay in payment to defendant National Seating & Mobility, Inc. of up to six months to a year which in return would cause the Montgomery office of National Seating and Mobility, Inc. to fail to meet a monthly quota required.
19. She became aware of several orders that did not have the required information and she informed Emily Williams and Defendant Don Williams' of the missing information, and therefore she could not verify to the Alabama Medicaid Agency whether the recipient would receive his or her equipment within the 60 day deadline.
20. She was instructed by Defendant Don Williams and Emily Williams to place a date on the documents, which she refused to do so because it would be a fraudulent act.
21. She became aware that the dates on the application were being falsified whereupon she reported this fact to the Director of Prior Approval Department with the Alabama Medicaid Agency, and to the best of her knowledge this information was reported to defendant Gerald Shockley.
22. Defendant Williams was questioned by Defendant Gerald Shockley who identified

Williams as part of management in NSM and also as the person who accused Plaintiff of lying because her employment with National Sating & Mobility, Inc. was terminated.
23. The Director of Prior Approval Department within the Alabama Medicaid Agency was questioned by defendants Shockley in July 2005 regarding Defendant Don Williams' statement, and the director provided defendant Shockley with evidence to prove that plaintiff was truthful regarding the false dates on the application.
24. Defendant Williams in conjunction with Defendant Shockley caused plaintiff to be subjected to a criminal proceeding whose primary basis was the false statement of defendant Williams. The criminal proceedings were terminated in her favor.
25. Defendant Williams acted out of malice or under such circumstances, including lack of probable cause, as would imply malice.
26. Defendant Williams furthered his malice against Plaintiff Horton by lying about Felecia Barrow's and Plaintiff Horton's relationship. Both Barrow and Plaintiff testified at their respective depositions that they are not friends.
27. Plaintiff avers that Defendant Gerald Shockley interviewed Felecia Barrow and had access to the Medicaid Agency file which contained a February 16, 2005 memorandum written by Felecia Barrow to her supervisor, Dr. Mary G. McIntyre, M.D., P.H.D. The memorandum contained information which confirmed Plaintiff's personal knowledge of Defendant National Seating and Mobility, Inc. submitting assessments with "missing clinic dates".
28. The February 16, 2005 memorandum also gave names of other witnesses such as a Medicaid Agency registered nurse, Teresa Surles, who also could have given her personal knowledge about missing clinic dates as it pertained to Defendant NSM.
29. The February 16, 2005 memorandum also contained statements by Felecia Barrow wrote the following: "It is odd that the assessments that Mr. Maddox has done for other vendors have a date on them, but the ones done for National Seating and Mobility, Inc. do not have dates. This was the same information that was reported by former National Seating employee, Elizabeth Horton."
30. Plaintiff avers that Defendant Shockley failed to talk with key witnesses who had personal knowledge of the same especially the registered nurse Surles who reported the same to Ms. Barrow and the physical therapist who said there were no dates.
31. Plaintiff avers that she was later interviewed by Investigator Anthony Green whom she met with him the same as she did with Defendant Shockley. Plaintiff avers that she was asked by both investigators to identify names off a roster of clients serviced by Defendant NSM during her time of working at NSM office. She complied but did not state whether or not the recipients did not receive wheelchairs.
32. Investigator Anthony Green did testify that based on his knowledge of Plaintiff Horton, that Plaintiff is not a liar and that he as an investigator would not have made an arrest of her.
33. Plaintiff has been damaged in that she has been subjected to pain, suffering, loss of liberty, emotional distress, mental anguish, embarrassment, humiliation, loss of time, and loss of income.
    (b)    **Defendant National Seating & Mobility:** National Seating and

> Mobility, Inc., makes the following contentions. In making these contentions, it does not waive its rights to contest Plaintiff's contentions. Further, it incorporates all of the other Defendants' contentions.

1. Plaintiff was a temporary employee working at the National Seating and Mobility, Inc., office in Montgomery, Alabama. Her duties included answering the phone and taking messages, as necessary, pulling the screening form for each patient, putting the screening form with the patient's Medicaid packet, and mailing the packet. She was not involved with the intricacies of the Medicaid approval process nor did she have a quality assurance role.
2. Neither Don Williams nor Emily Williams had a monthly quota.
3. No Medicaid-related information or documentation was falsified.
4. Ms. Barrow did not investigate Plaintiff's allegations nor did she have first-hand knowledge of the allegations. She did not provide Gerald Shockley with evidence to prove that plaintiff's allegations about false dates on applications were truthful.
5. No employees or representatives for National Seating and Mobility, Inc., played any role in Plaintiff's arrest, prosecution, or criminal charges.
6. The Defendants did not conspire against Plaintiff; there is no state action; Plaintiff has not alleged that any federal action led to any alleged deprivations of rights; Plaintiff's arrest was with probable cause; National Seating and Mobility, Inc., did not intentionally or knowingly deprive Plaintiff of any established Constitutional right; National Seating and Mobility, Inc., acted without malice; and Plaintiff has not been deprived of any constitutional right by the Defendants.
7. National Seating and Mobility, Inc., cannot be liable for the acts of its employees, nor can there be any *respondeat superior* liability against National Seating and Mobility, Inc.
8. Plaintiff fails to state grounds upon which relief can be granted; her claims are barred by the applicable statute of limitations; and Plaintiff's claims are barred by one or more of the doctrines of laches, waiver, unclean hands, and equitable or judicial estoppel.
9. Plaintiff is not entitled to damages of the nature, type, and amount sought, and her claims for equitable relief may not be tried before or decided by a jury.
10. Plaintiff is not entitled to an award of punitive damages as she has not pled and can not prove facts sufficient to support an award under applicable law; the award of punitive damages is prohibited or limited by statutory and/or decisional law; and all defenses and criteria of *BMW of North America, Inc. v. Gore*, 116 S. Ct. 1589 (1996), apply. Furthermore, Plaintiff's claims for punitive damages are barred on the following grounds:

  > (1) Plaintiff is not entitled to punitive damages.

  > (2) Plaintiff's claims for punitive damages against National Seating and Mobility, Inc., and the invitation for a court or jury to impose

6

liability on National Seating and Mobility, Inc., for punitive damages without guidelines or standards for determination of the amount or proper circumstances for such an awards would deny National Seating and Mobility, Inc., due process of law in violation of the Fourteenth Amendment to the United States Constitution and in violation of the Constitution of the State of Alabama.

(3) Imposition of punitive damages in this case would contravene the due process clause of the United States Constitution and the Constitution of the State of Alabama and the Fourth, Sixth, Eighth and Fourteenth Amendments, and the Commerce Clause, to the United States Constitution

(c) **Defendant Don Williams:** Don Williams makes the following contentions. In making these contentions, he does not waive its rights to contest Plaintiff's contentions. Further, he incorporates all of the other Defendants' contentions.

1. Don Williams was not involved in the Medicaid approval process and did not instruct Plaintiff to create, alter, fill-in, falsify, or otherwise complete any dates on Medicaid forms or documents.
2. Don Williams was interviewed by the Alabama Medicaid Agency. During the interviews, he was not informed of the complainant's identity, though he speculated that Horton made the complaint because she had been terminated.
3. Don Williams is immune from suit because he acted as testimonial witnesses.
4. Don Williams did not initiate a judicial proceeding against plaintiff.
5. Don Williams did not intentionally or knowingly deprive Plaintiff of any established Constitutional right or any statutory right; Don Williams acted without malice or wreckless indifference towards Plaintiff, and in good faith.
6. Don Williams's actions were within the line and scope of his employment and for the benefit of his employer.
7. Don Williams is entitled to receive attorney fees and costs arising from the defense of this frivolous complaint.
8. If files sent to the Alabama Medicaid Agency contained material errors or omissions, these would not have a caused a delay in payment of up to six months or a year.

(i) **Defendant Gerald Shockley:** Gerald Shockley makes the following contentions. In making these contentions, he does not waive its rights to contest Plaintiff's contentions. Further, he incorporates all of the other Defendants' contentions.

1. Defendant Gerald Shockley is employed by the Alabama Attorney General's Office as a Senior Special Agent and has been so employed for twelve years. Before being employed by the State of Alabama, Defendant Shockley was employed as a Special Agent by the Federal Bureau of Investigation (FBI) for twenty five years.
2. As a Senior Special Agent for the Attorney General's Office, Shockley was assigned, after the retirement of Special Agent Michael Roeder, to further investigate allegations made by Plaintiff Elizabeth Horton about her former employer, National Seating and Mobility (NSM), a provider of specialized, made to order wheelchairs for crippled children.
3. The investigation was initiated upon the receipt of a referral memorandum from the Alabama Medicaid Agency that was written by Felecia S. Barrow of the Alabama Medicaid Agency's Prior Approval Unit. The memorandum, dated 9 July 2004, was based upon allegations made by Elizabeth Horton to Felicia Barrows after Horton was terminated by NSM.
4. In her memorandum, Barrow stated that the Prior Approval Unit of the Alabama Medicaid Agency had been made aware of potential issues involving NSM that included, among other allegations, "Forgery of recipients' signatures on delivery tickets for durable medical equipment."
5. The case or investigation was originally assigned to another agent, Special Agent Michael Roeder, of the Alabama Attorney General's Office, Medicaid Fraud Control Unit. Agent Roeder interviewed Plaintiff Elizabeth Horton on 15 April 2005. During the interview she told Roeder that she worked for NSM from March 2004 to June 2004 as a billing clerk/office worker responsible for Medicaid, Medicare and private insurance billings.
6. Horton stated to Roeder that during the time that she worked for NSM that she became aware of numerous occasions that Medicaid was billed for wheelchairs and other items that were not delivered by NSM. She knew this because several patients or their sponsors called Horton to inquire about their equipment which had not been delivered. She told Roeder that she kept a record of the patients who called to inquire and that she would be willing to provide the Attorney General's Office with copies of her notes substantiating her allegations.
7. During the interview, Roeder provided Horton with a detailed list of billings to the Alabama Medicaid Agency by NSM for the period 1 Oct 2003 through 31 December 2004. After examining the list, Horton placed a check mark by 37 names of individuals who contacted her when she was working at NSM to complain that they had not received their wheelchairs.
8. Special Agent Roeder retired from State service in May, 2005 and the case was assigned at that time to Defendant Shockley for further investigation.

     Shockley attempted several times to schedule a meeting with the Plaintiff to re-interview her but was unsuccessful.

9. To determine the validity of the allegations made by the Plaintiff against NSM to the Alabama Medicaid Agency and to Roeder, Shockley attempted to contact the sponsors of the 37 children checked on the list by Horton as Medicaid recipients who did not receive their wheelchairs. He was able to contact 24 sponsors for 24 of the 37 children indicated by Horton as having not received their wheelchairs. All 24 contacted by Shockley stated that they indeed received their wheelchairs from NSM, contrary to the allegations made by Horton.

10. During the course of his investigation, Shockley interviewed Felecia Barrow on 23 June 2005 about the allegations Horton made to her that resulted in Barrow's memorandum of 9 July 2004. Shockley asked Barrow, "Are you familiar with the allegation [made by Horton] that there were chairs not delivered?" Barrow replied that "I think that she had mentioned something like that to me but there was nothing that I witnessed in the office from the request that we received that would indicate or calls from recipients that, hey I didn't get my chair from National Seating." Shockley then asked Barrow, "That's what she was telling you, that she got calls from recipients and responses?" Barrow answered, "No she was telling me that there were, she knew that there were cases where the chairs had not been delivered to clients and even cases where they would order a chair for a client but let another client borrow the chair and use it for a period of time and then turn it back in and then they would get it to another recipient as a new chair." Barrow then added, "But I never saw anything that would, you know, show as documented proof."

11. On 1 August 2005, Shockley reviewed the evidence developed by him and Roeder with Assistant Attorney General Bruce M. Lieberman, Director of the Attorney General's Medicaid Fraud Control Unit. Upon a consideration of the facts, Lieberman authorized the prosecution of the Plaintiff for the offense of False Reporting to Law Enforcement Authorities as provided in Ala. Code 1975 §13A-10-9. Shockley proceeded on that day to the Montgomery County District Court Magistrate, Holley Faems, filed a complaint and obtained a warrant for the arrest of Mrs. Elizabeth Horton, charging her with furnishing a false report to law enforcement officers.

12. Shockley gave the following statement to the magistrate in the form of his affidavit to substantiate his allegations.

> Your affiant, Gerald G. Shockley, an Investigator with the Alabama Attorney General's Office, Montgomery, Alabama does hereby depose and affirm that he has conducted an investigation and determined that there is probable cause to believe that Elizabeth Horton did on 4/15/05 make a false report to a law enforcement officer employed by the

9

> Alabama Attorney General's Office, in violation of Alabama Code 13A-10-9.
>
> On April 15, 2005, Ms Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed. Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.
>
> Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.
>
> Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.
>
> After conducting investigation and only finding evidence refuting the allegation, your affiant concludes there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered.

13. Thereafter, the Plaintiff, Elizabeth Horton was arrested and charged with violating Ala. Code 13A-10-9, False Reporting to Law Enforcement Authorities. Upon trial, she was found not guilty and decided to bring this civil action.

10

    (5)    **STIPULATION BY AND BETWEEN THE PARTIES**:
None.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last two days, are set for September 8, 2008, at 10:00 a.m. at the Frank M. Johnson, Jr. United States Courthouse Complex, Courtroom 2FMJ, One Church Street, Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs are required to be filed by August 22, 2008;

(5) All deadlines not otherwise affected by this

order will remain as set forth in the uniform scheduling order (Doc. No. 50) entered by the court on June 19, 2007; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by Order of the court.

DONE, this the 20th day of May, 2008.

                    /s/ Myron H. Thompson
               **UNITED STATES DISTRICT JUDGE**