IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ELIZABETH HORTON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   CASE NO. 2:06-CV-00526-MHT-DRB |
| | ) |
| DON WILLIAMS, et al., | ) |
| | ) |
|     Defendants. | ) |

### SUBMISSION OF AUTHORITY AND ARGUMENT

Comes now Defendant Gerald Shockley, by and through counsel, Troy King, Attorney General of Alabama, and Jack Wallace, Jr., Assistant Attorney General, to submit legal authority and argument upon the question posed by this Honorable Court to the Defendant.

The Court requested that the Defendant address the issue of whether an affidavit submitted to a magistrate for the issuance of an arrest warrant was fatally flawed by the inclusion within the affidavit of information that was false along with information that was true. The inclusion of false information in the affidavit does not make the affidavit invalid per se. Rather the courts are instructed to subtract the false information and then weigh the remaining facts to determine whether are not the facts establish arguable probable cause.

The issue arises in the applicability of qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Bashir v. Rockdale County,* 445 F.3d 1323, 1327 (11th Cir.2006) (citation and brackets omitted). "To overcome qualified immunity, the plaintiff must satisfy a

two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir.2004). "[T]he two inquiries must be conducted in the proper order." *Skop,* 458 F.3d at 1137 (citation omitted).

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
>
> U.S. Const. Amend. IV.

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gonzalez,* 969 F.2d 999, 1002 (11th Cir.1992). "Probable cause determinations traditionally have been guided by reviewing the totality of the circumstances." *Id.* An arrest made with probable cause is an absolute bar to a § 1983 false arrest claim. *Ortega v. Christian,* 85 F.3d 1521, 1525 (11th Cir.1996).

"While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop,* 485 F.3d at 1137. Even if the officer did not in fact have probable cause, we apply the standard of " 'arguable probable cause,' that is, whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendant *could have believed* that probable cause existed to arrest.' " *Id.* (citation and brackets omitted) (emphasis in original).

"[T]he Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen ... if such false

2

statements were necessary to the probable cause." *Jones v. Cannon,* 174 F.3d 1271, 1285 (11th Cir.1999); *see also Whiting v. Taylor,* 85 F.3d 581, 585 n. 5 (11th Cir.1996) ("Knowingly making false statements to obtain an arrest warrant can lead to a Fourth Amendment violation"). "A search warrant may be voided if the affidavit supporting the warrant contains deliberate falsity or reckless disregard for the truth, and this rule includes material omissions. *Dahl v. Holley,* 312 F.3d 1228, 1235 (11th Cir.2002) (internal citations omitted). However, a "warrant is valid if, absent the misstatements or omissions, there remains sufficient content to support a finding of probable cause." *Id.* (citation omitted).

In the pretrial conference, the Court indicated that it believed that portions of the affidavit submitted by Defendant Shockley were false, based upon the contents of paragraph 7 of the Roeder affidavit in which Roeder stated that Horton identified 37 recipients who had not received wheelchairs though she could not say that this was the result of fraudulent billing. To the extent that error has been injected into this case, counsel submits that it is due to his vociferous arguments rather than due to the actual statements of Defendant Shockley in his affidavit submitted to the magistrate. Counsel had not accurately recognized the full extent of the contents of paragraph 7 of Roeder's affidavit until pointed out by the Court. Thus, Counsel previously argued, based upon the rest of the evidence and inferences there from, that the Plaintiff, Horton, had identified the 37 patients as evidence of fraudulent billing. **_HOWEVER, IT SHOULD BE NOTED THAT DEFENDANT GERALD SHOCKLEY DID NOT STATE IN HIS AFFIDAVIT SUBMITTED TO THE MAGISTRATE THAT EVIDENCE CONCERNING THE 37 RECIPIENTS WAS EVIDENCE OF FRAUDULENT BILLING._** Rather, Shockley just plainly cited the facts without applying any conclusion as to the significance of the 37.

Let us examine Shockley's affidavit in total and then as it compares in pertinent part to the facts stated by others.

Shockley submitted the following affidavit to the Magistrate which is before the court as Defense Exhibit E, document 69-12, page 14 of 15.

> Your affiant, Gerald G. Shockley, an Investigator with the Alabama Attorney General's Office, Montgomery, Alabama does hereby depose and affirm that he has conducted an investigation and determined that there is probable cause to believe that Elizabeth Horton did on 4/15/05 make a false report to a law enforcement officer employed by the Alabama Attorney General's Office, in violation of Alabama Code 13A-10-9.
>
> On April 15, 2005, Ms Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed. Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.
>
> Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.
>
> Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.
>
> After conducting investigation and only finding evidence refuting the allegation, your affiant concludes there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered.

Mike Roeder's affidavit is before the court as Defense Exhibit G, document 69-15. In paragraph 3, Roeder stated:

> In July 2004 I received a memorandum from Felecia Barrow, who at the time was the Associate Director of the Alabama Medicaid Agency, articulating allegations of fraudulent activity reported by a former employee of National Seating and Mobility ("NSM"). I duly investigated the allegations.

In paragraph 4, Roeder stated:

> Barrow's memorandum alleged that a former employee of NSM (later identified as Elizabeth Horton) was willing to provide information about allegations that NSM was billing Medicaid for services NSM had not rendered, and was forging recipients' names on delivery tickets for equipment – that is, billing for equipment that NSM had not delivered to clients who were Medicaid recipients.

In paragraph 5, Roeder verifies that the notes about Roeder's investigation into Horton's allegations that are contained in Shockley's report of investigation, presently before the court as Defense Exhibit F, documents 69-13 and 69-14, are correct. He stated specifically that:

> I have reviewed the notes regarding my investigation that are contained in the report of Gerald Shockley's investigation, and they are true and correct.

The notes verified by Roeder in his affidavit were also verified at the time that the notes were transcribed as evidenced by his signature as it appears on pages 22 and 23 of Defense Exhibit F, document 69-13 and continued in document 69-14. These notes are the basis for counsel's previous argument about the 37 recipients. The notes that Roeder vouchsafes in paragraph 5 arguably contradict his statement made in paragraph 7 relied upon by the court. Perhaps the difference, if any, between the notes verified by Roeder as correct and his statement in paragraph 7 of his affidavit are due to the passage of time. The notes were verified by Roeder's signature back in 2005 and his affidavit was submitted 18 Feb 2008. The notes that

Roeder verifies as being correct in Shockley's investigation are the notes of the transcription of the interview between Shockley and Roeder at the time that Roeder passed the investigation to Shockley. Not only did Roeder verify the veracity of the notes in paragraph 5 of his affidavit but he signed the bottom of each of the pages of the notes as true and correct. Those notes are before this Honorable Court at Defense Exhibit F, Shockley's Second Affidavit, document 69-13 at pages 22 and 23 of 62.

The notes, doubly verified as accurate by Roeder's signature on the bottom of each page of the notes as well as by way of his affidavit, state:

> Ms Elizabeth Horton advised Special Agent Roeder she worked at National Seating & Mobility from March 2004 to June 2004 and she was hired as a billing clerk/office worker and as such did all the Medicaid, Medicare, and private insurance billing. Ms Horton stated that during the time she worked for National Seating, she was aware on numerous occasions that Medicaid was billed for wheelchairs and other items that were not delivered by National Seating & Mobility. Ms Horton knew this because several of the patients or their sponsors called her and wanted to know where their equipment was. Ms Horton stated she kept a record of the patients who called her and has that information at her residence. She advised that she was willing to provide the Attorney General's Office with a copy of her notes backing up her allegation. She stated she questioned one of the owners, Emily Williams, about the problem of not delivering wheelchairs as billed and Ms Williams told her not to worry about it. Ms Horton stated that Don Williams and Emily Williams were the two responsible parties for making the delivery of the items billed and that they would falsify delivery tickets.
>
> Ms Horton advised that in addition to failing to deliver wheelchairs as certified, National Seating would often swap parts back and forth with National Seating in Birmingham such as batteries and would still bill Medicaid for those parts.
>
> Ms Horton advised that she worked for Kelly Services who placed at National Seating & Mobility and her services were terminated by National Seating & Mobility because she was too friendly with Felecia Barrows, Associate Director Prior Approval Unit, Medicaid Agency. Mr. Roeder advised that he showed a detailed

report of billings conducted by National Seating & Mobility to Ms Elizabeth Horton and Ms Horton reviewed the list and checked the names of the individuals she knew did not receive their equip0ment. The report covered the period of 10/1/03 – 12/31/04. Ms Horton advised that the individuals whose names she checked on the billing list set forth above contacted her when she employed at National Seating and wanted to know about the delivery of the wheelchair. In addition Ms Horton identified two recipients that National Seating received payment from Medicaid and Blue Cross Blue Shield for the same equipment and never refunded Medicaid.

In paragraph 6 of his affidavit Roeder states that:

> I interviewed Ms. Horton on April 15, 2005. At that time, she alleged that while working for NSM, the company billed the Alabama Medicaid Agency for wheelchairs that had not actually been delivered to NSM's clients, who were Medicaid recipients.

By comparison, in the second paragraph of his affidavit submitted to the magistrate, Defendant Shockley stated the following, based upon the information given to him by Roeder:

> On April 15, 2005, Ms Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed.

There is no significant disparity between Roeder's statement and Shockley's statement in the first sentence of the second paragraph of Shockley's affidavit submitted to the magistrate.

In paragraph 7 of his affidavit, Roeder stated, in pertinent part, that:

> I showed Horton a computer printout of all billings made by NSM to Medicaid from October 1, 2003 until December 31, 2004. I asked Horton to review the printout and identify recipients she recognized as having not received a wheelchair. She placed a check mark next to 37 names, which she recognized but which she could not say had been fraudulently billed.

By comparison, in the second sentence of the second paragraph of the affidavit that he submitted to the magistrate, Shockley stated:

> Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.

There is no substantial disparity between Roeder's statements and Shockley's affidavit that he submitted to the magistrate. Defendant Gerald Shockley did not state that the wheelchairs were not delivered due to fraudulent billing but rather that this was made as a statement of fact, to wit, that there were 37 people that the Plaintiff believed did not get their wheelchairs and that she identified them by name. Instead, Shockley reports that he was unable to confirm that they had not received their wheelchairs by his statement that is contained in the third paragraph of the affidavit that he submitted to the magistrate that:

> Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.

At this point, Defendant Shockley turned to Felicia Barrow of Medicaid to determine what evidence, if any, that she had of fraudulent billing by NSM. Shockley stated in the fourth paragraph of his affidavit submitted to the magistrate that:

> Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.

Shockley based this statement in paragraph four upon his interview of Felicia Barrow that was transcribed and appears in the summary of investigation that is attached to Shockley's Second Affidavit, Defense Exhibit F which is before the court as document 69-14, beginning at page 2 of 16.

Shockley:  Do you have any information concerning or were you given any information names of recipients that that allegedly did not receive the wheelchairs and if so, who gave it to you?

Barrow:  Well Elizabeth Horton, again, uh, provided this information uh, once she was terminated that uh, there she had a file, or had the names of the clients, uh where there were wheelchair repairs uh, done and the parts were received from other places or that CR, uh National Seating, I'm sorry had the part, uh, on site, did not have to order these parts but they would go ahead and repair the wheelchair but submit a prior authorization request to us in order to pay for the part to be reimbursed for a part, but they really weren't being reimbursed for a new part it was just a part that they had.

Shockley:  This is what Elizabeth was telling you?

Barrow:  Yes.

Shockley:  Okay, did she give you any names of recipients that would be affected by this?

Barrow:  Hmm, I think she did provide me with a few names and I think I had, uh, put all that information together to send uh here to investigations, uh, and I would have my copy of, you know, of what I had uh submitted.

Shockley:  She was interviewed by Mike Roeder, who has since retired from the Medicaid Fraud Control Un it, the Attorney General's Office.

Barrow:  Yes.

Shockley:  And she was saying there were a lot of chairs that were not delivered.

Barrow:  Hmm.

Shockley:  I hear you talking about parts. Are you familiar with the allegation that there was chairs not delivered.

Barrow:  I think that she had mentioned something like that to me but there was nothing that I witnessed in the office from the request that we received that would indicate or calls from recipients that, hey I didn't get my chair from National Seating.

Shockley:  That's what she was telling you, that she got calls from recipients and responses?

Barrow:  No, she was telling me that there were, she knew that there were cases where the chairs had not been delivered to clients and even cases where they would order a chair for a client but let another client borrow the chair and use it for a period of

9

    time and then turn it back in and then they would get it to another recipient as a new chair.

Shockley:  Uhmm.

Barrow:  But I never saw anything that would, you know, show as documented proof.

The Defendant submits that the evidence cited above supports Shockley's statements in paragraph five of his affidavit submitted to the magistrate, to wit:

> After conducting investigation and only finding evidence refuting the allegation, your affiant concludes there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered.

It should be noted that Defendant Shockley did not simply seek the arrest warrant of his own accord but did so after the evidence was reviewed by Bruce Lieberman, the Assistant Attorney General who supervises Shockley and upon Lieberman's request. See Defense Exhibit E, Shockley's First Affidavit, document 69-12 at page 3 of 15.

## CONCLUSION

Defendant Shockley respectfully submits to this Honorable Court that there are not any false statements contained in his affidavit that he submitted to the magistrate. He has demonstrated the factual basis for his belief in each statement contained therein. However, if this Honorable Court believes that there are false statements contained in the affidavit, Defendant Shockley then urges that the correct statements contained therein are sufficient in and of themselves to constitute arguable probable cause that Plaintiff Horton submitted a false report to a law enforcement officer and that he is therefore entitled to the protections of qualified immunity in this case.

Respectfully submitted on this the 23rd day of May, 2008.

>TROY KING
>ATTORNEY GENERAL
>
>/s/ *Jack Wallace, Jr.*
>Jack Wallace, Jr.
>Assistant Attorney General

Address of Counsel:
Office of the Attorney General
11 South Union Street
Montgomery, AL  36130
334.353.8671
334.242.2433 - fax
JWallace@ago.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I have, this the 23rd day of May, 2008, electronically filed the foregoing with the Clerk of Court using the CM/ECF. The Clerk of Court using the CM/ECF system will send notification of this filing to the following:

| | |
|---|---|
| Deborah M. Nickson<br>Attorney at Law | William O. Butler, III<br>Alabama Medicaid Agency |
| Charles Stewart, III<br>Laura Domm Taaffe<br>Quindal C Evans<br>Elizabeth Brislin Mitchell<br>Bradley, Arant, Rose & White, LLP | Dorman Walker<br>Kelly F. Pate<br>Balch & Bingham LLP<br><br>Courtney Tarver<br>Tamara Pharrams<br>Alabama Department of Mental Health<br>and Mental Retardation |

>/s/ *Jack Wallace, Jr.*
>Jack Wallace, Jr.
>Assistant Attorney General