IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ELIZABETH HORTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:06-CV-00526-MHT-DRB |
| | ) |
| DON WILLIAMS, et al, | ) |
| | ) |
| Defendants. | ) |

**SUBMISSION OF AUTHORITY AND ARGUMENT**

Comes now Plaintiff, Elizabeth Horton, by and through counsel, Deborah Nickson, Attorney at Law, to submit legal authority and argument upon the question posed by this Honorable Court to the Defendant.

Plaintiff submits this trial brief in support of the evidence and arguments relied upon in her response to Defendant Shockley's Motion for Summary Judgment. To paraphrase the defendants in their submission, the purpose of plaintiff's submission is to provide the Court with a discussion of the liability of defendant Shockley in relations to the criminal prosecution of the plaintiff for submitting a false report to a law enforcement officer. This trial brief will address the issue raised by this Court concerning the arguable probable cause and by inference malice.

ISSUE

*Whether the inclusion of false information with truthful information in an affidavit filed by a law enforcement officer would sustain a finding of lack of probable cause and malice?*

This Court has observed that the affidavit of Defendant Shockley contained statement about the recipient of true and false statements of facts. Therefore we submit that the relevant

1

question is whether the affidavit was he acted in good faith in his pursuit of the criminal prosecution of the plaintiff.

ARGUMENT

This Court has observed that the affidavit of Defendant Shockley contained true and false statements of facts. Therefore we submit that the relevant question is whether the affidavit was he acted in good faith in his pursuit of the criminal prosecution of the plaintiff. Plaintiff submits that Defendant Shockley knowingly provided false information which was most crucial in the magistrate's determination of issuing a warrant for Plaintiff's arrest. It is the position of this Plaintiff that Defendant Shockley intentionally withheld information that contained information where it was reported by someone other than Plaintiff that National Seating and Mobility may have been involved in irregularities. Chaseley Weeks, registered nurse Teresa Surles, and physical Gerry Rodgers confirmed the same. What is clear is that Defendant Shockley blatantly lied concerning the statement of Investigator Michael Roeder. Plaintiff submits to this Court that the criminal conduct could not be sustained without the allegation that specifically Plaintiff identified 37 names of people that did not receive wheelchairs. It is undisputed that Defendant Shockley main basis for seeking to charge the Plaintiff criminally is that he could not sustained any findings based on his own lie. Plaintiff never said what Shockley said she said in regards to the 37 people.

If the Court deducts the false statement concerning the 37 people from Defendant Shockley's affidavit, the question would then be whether there would be enough to sustain arguable probable cause. Plaintiff submits again that it would not be enough. Plaintiff would ask this Court to consider the testimony of Medicaid Investigator Anthony Green who also met Plaintiff and interviewed her regarding the suspected fraudulent activity by National Seating and

Mobility. Investigator Green was asked in his deposition the following and responded in the following manner:

> Page 9:22-23 and 10:3-7
>
> "What, if anything, was different about her (Plaintiff Horton) complaint, if you know? "From my perspective, it was, I would say a regular complaint. There was nothing that I can think of that was different from any of the other various complaints we've received."

In, *Holmes v. Kucynda*, 321 F.3d 1069, 1082-1083, (C.A.11 2003) the United States Court of Appeals noted, that "Finally, Holmes takes issue with the district court's grant of summary judgment on her claim that Officer Rolfe filed a recklessly false warrant application with the Cobb County Superior Court. Specifically, Holmes argues that Rolfe knowingly included false statements on the application suggesting that the cocaine and marijuana, as well as loose marijuana seeds, were discovered in the bedroom in which Holmes slept. Holmes further contends that the warrant application included additional handwritten notes, presumably made by the magistrate judge based upon Rolfe's oral statements to him, which falsely denote that she was "evasive as to the presence of others," that she and Wisong "both sleep in the bedroom with the drugs," and that "custody [of the apartment] was joint." The implication, Holmes suggests, is that these notes represent the magistrate's transcription of the facts that Rolfe verbally communicated. Since the facts known to Rolfe at the time he signed the warrant application plainly illustrated the falsity of these allegations, Holmes argues that Rolfe's statements are material misrepresentations and, as such, Rolfe is not entitled to qualified immunity."

In this instant case, the misrepresentation of the alleged 37 names identified by Plaintiff Horton is a material misrepresentation and the falsity of these allegations was the essential cause of Plaintiff's arrest. When viewing the August 1, 2005 affidavit signed by Defendant Gerald Shockley, it is clear that his investigation surrounded the alleged 37 names alleged identified by

Plaintiff Horton. Paragraph three of the same affidavit, Defendant Shockley stated that he contacted "24 of the 37 sponsors" and "all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient." Defendant Shockley limited his investigation to the 37 names and cannot say as of today whether other recipients did or did not receive the wheelchairs. The bottom line is that he sought to prosecute Plaintiff Horton based on his own false statement. It is clear that the probable cause was based on the investigation of the 37 names. To further substantiate this position, Defendant Shockley in the same affidavit which made the basis for Plaintiff's arrest admitted the same. For example, Defendant Shockley states in the last paragraph the following:

> "After conducting investigation and only finding evidence refuting the allegation, Your affiant concludes there is probable cause……"

The only investigation that Defendant Shockley did was based on the allegedly false statement concerning the 37 names allegedly identified by Plaintiff Horton as persons not receiving wheelchairs. The record in this case is undisputed that Plaintiff Horton told Investigator Roeder and Investigator Green the same facts and that is that the Plaintiff recognized the names but "could not say that had been fraudulently billed." The only person that has changed the statement of the Plaintiff is Defendant Gerald Shockley when he intentionally submitted a false statement to the magistrate to secure an arrest warrant for the Plaintiff. Such misrepresentations were material in that absent the false statement, no arrest warrant would have issued.

> "The Warrant Clause of the Fourth Amendment requires that warrant applications contain sufficient information to establish probable cause. [W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is

4

that there will be a truthful showing." While this condition does not dictate that the statements be objectively accurate, it does require that they "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." Thus, a police officer may be held liable under 42 U.S.C. §1983 for submitting an application for an arrest warrant that contains false information." (Holmes) (Internal citation omitted)

Anthony Green testified in deposition as follows:

Page 20

Q. And what, if anything, did Elizabeth tell you?
A. I had several conversations with Elizabeth -- should be Ms. Horton. Over the course of our conversations, she advised me that she felt that there were some things going on with National
Seating & Mobility that she felt may have been fraudulent.
Q. So her statements were pretty much one and the sane as Chaseley Weeks?
A Yes.

Page 21

A. During the conversations, we just discussed what she thought may have been going on She explained to me that one of the problems were that National Seating & Mobility were requesting extensions and the reason for this was because they weren't getting the equipment ready in time. And we just kind of went back and forth with information of that. I asked her if she had any specifics. She told me that she would be able to get me some names of people she remembered, but she wasn't able to clearly state that these are definitely people with fraudulent claims.
Q All right. So she just remembered some clients
A. Yes, ma'am.
Q - but didn't say whether or not these people had complained?
A. It wasn't so much whether or not they had complained. She was not able to say whether or not they actually were the ones where fraudulent activity had taken place.

Retired Special agent Michael Roeder in paragraph 7 stated that:

"I showed Horton a computer printout of all billings made by NSM to Medicaid from October I, 2003 until December 31, 2004, I asked Horton to review, the printout and identify recipients she recognized as having not received

5

a wheelchair. She placed a check mark next to 37 names, which she recognized but which she could in not say had been fraudulently billed."

Defendant Shockley's action in crafting or causing to be crafted the affidavit which was not supported by the prior investigation of the Agent Roeder and Agent Miller can lend no other conclusion other than deception on his part. The most glaring omission in the affidavit is the lack of facts weighing against plaintiff's guilt, namely the Felicia Barrow's memorandum dated February 16, 2005 in which Ms. Barrow wrote that a registered nurse "questioned the assessments and was told by (Gerry Rodgers) to get the dates from Emily, National Seating."

The memorandum further contains a statement that "it is odd that on the assessment Mr. Maddox has done for other vendors have a date on them, but the ones done for National Seating do not have dates. This was the same information that reported by former National Seating employee, Elizabeth Horton." *(See attached Plaintiff-Ex. 6 submitted during Barrow's deposition).*

Defendant Shockley in his Submission of Authority and Argument now attempts to suggest that maybe the lapse in time may have accounted for the variation in retired investigator Roeder's statement. Defendant Shockley has not explained why Anthony Green's deposition statement supports Roeder's affidavit as what the Plaintiff said concerning the 37 names. Both Investigators Green and Roeder's memory of what the Plaintiff said was consistent. This Plaintiff would ask of this Court to consider that she had in fact been away from the company for at least a year with an employment history with NSM for less than four months when she was contacted by both all three investigators Shockley, Roeder, and Green. Plaintiff at the time of contact by Medicaid investigators had other employment and was no longer associated with National Seating and Mobility. Plaintiff leaves this question with this Court as well as Defendant

Investigator Shockley, "How could she specifically identify 37 names of people who did not receive wheelchairs?" It is the position of the Plaintiff that she did not remember but was familiar names of recipients that was serviced during her employment with National Seating and Mobility. It was her position then and remains her position at this time.

Finally, the Court in *Davis v. Williams, 451* F.3d 759, 762 (11th Cir. 2006) addresses the following: "the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause," that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff. *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir.2004) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). To determine whether arguable probable cause exists, courts must look to the totality of the circumstances. At the summary judgment stage, courts view the totality of the circumstances in the light most favorable to the nonmoving party. See, Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002); Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir. 2005). That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version." Evans, 407 F.3d at 1278. Even though the "'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case," Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir.2000), our analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff, Skrtich, 280 F.3d at 1299.

Considering the totality of the circumstances, Defendant has not presented any motive as to why the Plaintiff would lie about observations of possible wrongdoings at National Seating

7

and Mobility during her employment with the company. In further consideration of the totality of circumstances, Investigator Shockley intentionally withheld parts of his investigation which could show that registered nurse Teresa Surles and Michael Maddox both noted missing dates which was the same as Plaintiff Horton had reported. The totality of circumstances to be considered cannot exclude the fact that Investigator Green stated that Plaintiff Horton's complaint was no different than others and that her statement to Green was the same as the one made to Investigator Roeder. Lastly, this Plaintiff ask this Court consider Feleica Barrow's memorandum and its attachment which is *Plaintiff's Exhibit 6* attached hereto. Defendant Shockley intentionally concealed that Ms. Barrow also confirmed what Plaintiff Horton said in reference to missing dates by supplying tangible evidence (two documents) as examples to her February 16, 2005 memorandum to Dr. Mary McIntyre.

Based on the above, Plaintiff submits that an affidavit used to procure an arrest warrant that contained false information is such that it must be considered a "misrepresentation of the facts in order to induce action, or there was a suppression of known material facts." It is further the Plaintiff's position that the false information submitted by Defendant Shockley was a material misrepresentation and that absent that material misrepresentation, no arrest warrant could be issued.

Respectfully submitted on this the 28th day of May, 2008.

/s/Deborah M. Nickson
OF Counsel for Plaintiff Horton

Deborah M. Nickson
2820 Fairlane Drive, Ste A-10
Montgomery, AL 36116
334-213-1233

8

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CERTIFICATE OF SERVICE

I, Deborah M. Nickson, do hereby certify that a true and correct copy of the foregoing Plaintiff's Submission Of Authority and Argument has been served on all counsel and parties of record, by electronically filing this document through the Middle District's electronic filing system which will send notification of such filing to the following on this 28th day of May, 2008.

/s/ Deborah M. Nickson
Deborah M. Nickson
OF COUNSEL
2820 Fairlane Dr. Ste. A-10
Montgomery, Al 36116
334-213-1233

Hon. Charles A. Stewart, III
Bradley, Arant, Rose & White LLP
The Alabama Center for Commerce
401 Adams Avenue, Ste. 780
Montgomery, AL. 36104
Cstewart@bradleyarant.com

Hon. Jack W. Wallace, Jr.
Office of the Attorney General
11 South Union Street
Montgomery, AL. 36130
JWallace@ago.state.al.us

Hon. Kelly Pate,
Hon. Dorman Walker
Balch & Bingham LLP
P.O. Box 78
Montgomery, AL. 36101
DWALKER@balch.com
kpate@balch.com

Hon. Quindal C. Evans
Bradley Arant Rose & White LLP
The Alabama Center for Commerce
401 Adams Ave., Suite 780
Montgomery, Al 36104
qevans@bradleyarant.com

ALABAMA MEDICAID AGENCY

February 16, 2005

**MEMORANDUM**

To:         Mary G. McIntyre, M.D., M.P.H.
            Medical Director
            Office of the Commissioner

From:       Felecia S. Barrow, M.P.A.
            Associate Director
            Prior Approval Unit

Re:         Issues with Wheelchair Assessments Received

*[Handwritten: 02-17-05 Refer to SUR Jackie Thomas to Clifford Johnson]*

      Please find attached examples of wheelchair assessments that have been submitted by National Seating and Mobility – Montgomery, that were missing the clinic dates. Two of the assessments were conducted by Gerry Rodgers, P.T. and one by Michael Maddox, R.P.T., both of Children's Rehab Services.

      Teresa Surles, R.N. questioned the assessments and was told (by Gerry Rodgers) to get the dates from Emily, National Seating. I informed Teresa that the clinic dates should be kept at CRS where the assessment was conducted. Teresa, under my direction, contacted CRS to get the clinic date instead of Emily. Jackie (CRS) informed Teresa that the date of the clinic appointment was July 20, 2004. The PA request was submitted in February 2005. A subsequent fax was received from Gerry Rodgers indicating that the assessment was reviewed on 2/15/05 and was "still o.k." I conferred with Teresa and Debbie and thought that we needed updated clinic notes telling us the current condition of the client. On another client, both the physician's note of medical necessity and the P.T. assessment were lacking dates.

      Teresa came across another assessment completed by M. Maddox and placed a call to the P.T. to find out why the date was missing. The P.T. replied, "...maybe we're not supposed to do this (pause), but I never put dates on the assessments or the prescriptions because it messes up the vendor"..."like, we're on a time clock...". It is odd that on the assessments that Mr. Maddox has done for other vendors have a date on them, but the ones done for National Seating do not have dates. This was the same information that was reported by former National Seating employee, Elizabeth Horton.

      I would like to refer this information to Clifford Johnson, Chief Investigator, Program Integrity Division. If it is too premature at this point, I will wait.



PLAINTIFF'S EXHIBIT

6 – Barrow

## CHILDREN'S REHABILITATION SERVICE
## REPORT OF VISIT

SSN:     PATIENT: KATIE LYNN SMITH     DATE:

Katie Lynn is a cute little 4-year-old. She is very premature. She had hydrocephalus and CP. Mary has followed her and is concerned with her left hip and her right heelcords. On exam, there are problems with the left leg and left tendo-achilles. There are definitely tight, and I cannot get it quite to neutral. Right side is passively correctable, but she does have increased tone, and she likes to hold it in equinus. On my exam, the hips feel steady and leg lengths appear to be equal. I really think an AP and frog lateral hip x-rays would be appropriate. We are going to do serial casting on the left leg. She will need a set of fixed AFOs. I will see her back in this clinic in three months.

(Joseph Curtis, M.D.)/sl

## CHILDREN'S REHABILITATION SERVICE
## REPORT OF VISIT

SSN:     PATIENT: KATIE LYNN SMITH

**PHYSICAL THERAPY:**

Katie Lynn is unable to ambulate and needs a chair for mobility. She is getting too long to be carried and she has good use of her upper extremities so we would like for her to be able to push some when she is in a seated position. She goes to daycare at school, and they need a way to get her around in these areas also. I feel that at this point due to the family situation, we may need to get a stroller that can be transported in many different vehicles that is easy to fold up and easy to get around. We can also get some large wheels where she can push herself on it sometimes. Katie Lynn can sit up with hand supports so I feel like with a five-point harness, she could sit up in the stroller very well. A prescription for this was given to Don from National Seating and Mobility today. She does not have current EPSDT, and once this is done, we need to get a copy and forward it over to National Seating along with a copy of this clinic dictation so that they can submit it to Medicaid. Once it is approved, will be ordered. When it comes in, we will schedule a time for delivery. She had a wheelchair recommended a couple of years ago through Seating Clinic. It was approved and ordered, but we were never able to get a hold of the family for delivery, so the chair had to be sent back. Katie Lynn much larger than she was then, so what we ordered then would not be appropriate, and we need a new seating system this time.

(Gerry Rodgers, PT, PCS)/sl

CHILDREN'S REHABILITATION SERVICE
REPORT OF VISIT

SSN: [redacted]   PATIENT: JASMINE WILLIAMS

7/20/04 per Jackie@CRS

PHYSICAL THERAPY:
Jasmine's seating system has been wearing out. Foam is visible through most of the different pads and seating systems. In addition, her scoliosis has worsened, and her spine is actually shortened, so the back is too tall. In addition, the back posts get out of whack according to the mom. They were uneven today, and I evened them back up. I described the rigidizing bar that would go in between there, but it would be one more step in folding the chair. Mom would like to go ahead and do this. We need to repair the brake on the left side of the chair. Otherwise, the frame is in pretty good shape. I do think that we need to get her new seating to continue to support her in her wheelchair. She needs a solid seat and back, thoracic pads and hip guides to keep her trunk and hips in the midline. She needs an abductor to keep her hips apart. Her right leg tends to adduct excessively. She needs a three-piece headrest for posterior and lateral head support. She needs a rigidizer bar to keep the frame from getting out of line and brake repair on the left. EPSDT and prescription were given to Emily from National Seating and Mobility. We need to send a copy of this clinic dictation to her so that she can submit it to Medicaid. Once the approval is received from Medicaid, the chair will be ordered. When it comes in, we will schedule a time for delivery.

(Gerry Rodgers, P.T., PCS)/sl