IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | |
|---|---|
| ELIZABETH HORTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:06cv526-MHT |
| ) | (WO) |
| DON WILLIAMS, NATIONAL , ) | |
| SEATING AND MOBILITY, INC., ) | |
| and GERALD SHOCKLEY in his ) | |
| individual capacity. ) | |
| ) | |
| Defendants. ) | |

## OPINION

Plaintiff Elizabeth Horton brings this lawsuit against

the following defendants: National Seating and Mobility,

Inc.; Don Williams, a National Seating employee; and

Gerald Shockley, an investigator with the Alabama Attorney

General's Office.   Horton charges that the defendants

violated the Fourth Amendment, as enforced through the

Fourteenth Amendment and 42 U.S.C. § 1983, by maliciously

prosecuting her for a report she made to law-enforcement

authorities.   Jurisdiction is proper pursuant to 28 U.S.C.

§§ 1331 (federal question) and 1343 (civil rights).   Now

pending before the court are the defendants' motions for summary judgment. For the reasons that follow, the motions will be granted.


## I.  SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In deciding whether summary judgment is appropriate, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).


## II.  BACKGROUND

In 2004, Horton was employed for three months as a temporary worker at National Seating, which provides customized wheelchairs and seating systems for Medicaid

2

patients, mostly children, who have been diagnosed with a permanent or long-term loss of mobility.  Irregularities she observed led her to believe that the company might be engaging in fraudulent business practices.

Upon leaving the company, Horton was contacted by Felicia Barrow, the associate director of the the Alabama Medicaid Agency's Prior Approval Unit.  Horton reported the potentially fraudulent business practices she had observed.

In a memorandum submitted to the Alabama Medicaid Agency's investigative unit, Barrow described Horton's allegations of irregularities to include the following: (1) forgery of recipients' signatures on delivery tickets for durable medical equipment; (2) "[i]mproper billing practices, such as submitting requests for reimbursement of repair items that [were] already in stock, ordering the wrong part for wheelchair repairs and subsequently submitting additional [prior approval] requests for the same client where the item had already been requested and paid," Barrow Memorandum to Alabama Medicaid Agency (Doc.

No. 69, Exh. B); (3) instructing clients to deliberately leave the date section blank on the delivery ticket so that the company could manipulate the date; and (4) holding requests with outdated prescription so as to allow the company to indicate a current date on an old prescription. At the conclusion of the memorandum, Barrow wrote: "A former employee of the company is willing to provide information necessary to assist in any investigation conducted." Id. On the basis of these allegations, the agency sent Barrow's memorandum to the Alabama Attorney General's Office, which assigned Mike Roeder to investigate.

Roeder identified Horton as the employee described in the Barrow memorandum, and he interviewed her briefly. According to her deposition, Horton informed Roeder that she did not know any details related to the alleged irregularities and that the only thing that she could recall were prescriptions for durable medical equipment that lacked dates or had incorrect dates; she told Roeder that she did not know whether National Seating was

4

involved in any Medicaid fraud and that he should contact the previous employee in her position who might have more information; Roeder provided Horton with a list of recipients of the company's durable medical equipment and asked Horton whether she could remember any names of recipients who may have come across her desk; Horton placed checkmarks next to the 37 names that she may have sent to Medicaid or "worked up," but she had no idea whether the particular recipients were actually defrauded by the company.

Before the investigation ended, Roeder retired and Shockley, who was also with the Attorney General's office, took over. Shockley met with Roeder and, according to Shockley, Roeder described Horton's allegations in the interview with him as follows: National Seating had defrauded the 37 recipients she checkmarked on the company's list by failing to deliver wheelchairs to them while continuing to bill Medicaid for them. Shockley called the sponsors of 24 of the 37 checkmarked medicaid recipients on the list, and all informed him that they had

5

received their wheelchairs from the company with only one citing a problem of delay and another citing a problem with getting the right parts for his wheelchair. Shockley attempted to interview Horton, but she never made any of the scheduled appointments.

After concluding the investigation, Shockley discussed the case with the Director of the Attorney General's Medical Fraud Control Unit. After hearing the facts, the director authorized the prosecution of Horton for furnishing a false report to law-enforcement authorities in violation of Alabama law. Horton was arrested, tried, and ultimately acquitted of the charge. After the acquittal, she filed this federal lawsuit.


### III.  DISCUSSION

<u>Don Williams and National Seating and Mobility</u>: Williams and his employer National Seating contend that they cannot be held liable for Horton's § 1983 malicious-prosecution claim because they are private actors and thus did not act under color of state law.

It is well-settled that to obtain relief under § 1983, a plaintiff must show (1) that the defendant "deprived her of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." Willis v. Univ. Health Svcs., Inc., 993 F.2d 837, 840 (11th Cir. 1993) (citation omitted). "Although § 1983 technically requires that the action in question be taken 'under color of [state] law,' this requirement is considered in pari materia with the Fourteenth Amendment's state action requirement." Focus on the Family v. Pinellas Suncoast Transit Auth., 344 F.3d 1263, 1276 n. 4 (11th Cir. 2003).

Consistent with the state-action doctrine, the § 1983 under-color-of-law requirement "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Id. at 1277 (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). However, "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983." Dennis. v. Sparks, 449 U.S. 24,

7

27-28 (1980) (citation omitted); see also Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992) (making clear that "only in rare circumstances can a private party be viewed as a 'state actor' for [§] 1983 purposes").

There are three tests for determining whether the actions of a private actor are properly attributed to the State: "(1) the public function test, (2) the state compulsion test, and (3) the nexus/joint action test." Willis, 993 F.2d at 840 (citation omitted). The public-function test requires that actions of private actors be attributed to the State when the private actor is performing functions "traditionally the exclusive prerogative of the state." Id. (citation omitted). The state-compulsion test requires that actions of private actors be attributed to the State when the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." Id. (citation omitted). Finally, the nexus/joint action test requires that actions of private actors be attributed to the State when "the state has so far insinuated itself into a

position of interdependence with the [private party] that it was a joint participant in the enterprise." Id. (citation omitted).

The parties agree that the public-function and state-compulsion tests are not applicable to this case; instead, the issue is whether the actions of Williams and National Seating can be attributed to the State under the nexus/joint action test. To prove state action under this test, Horton must show that the defendants "conspire[d] with state officials" in maliciously prosecuting her. NAACP v. Hunt, 891 F.2d 1555, 1563 (11th Cir. 1990). To establish a conspiracy, she must show that the defendants and state officials "reached an understanding to violate [her] rights." Rowe v. City of Ft. Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002). Such an understanding would require "some evidence of agreement." Id. at 1284.

The facts presented by Horton, taken as true, do not support the contention that Williams and National Seating were anything other than private actors acting in cooperation, but not jointly and pursuant to an agreement,

with the State in the investigation that led to Horton's arrest and prosecution.  The cooperation between Williams and the Alabama Attorney General's Office was limited to two telephone interviews.  Shockley questioned Williams about Horton's fraud allegations as part of the investigation into National Seating's allegedly fraudulent business practices.  In those interviews, Williams adamantly denied that the company had engaged in any fraud and suggested that Horton may have made the complaints in retaliation for termination of her employment.

Horton contends that Williams lied in claiming that she was terminated by National Seating.[1]  Even assuming that Williams did lie, the evidence is not sufficient to show that there was an agreement between Shockley and Williams to arrest and prosecute her.  The evidence, in fact, contradicts any theory of a conspiracy between

---

1.  Horton explains that she was not terminated but that, instead, her temporary contract ended and she found another job.  She argues that National Seating could not have terminated her because she was a temporary worker employed by Kelly Services and assigned to National Seating; therefore, only Kelly Service could have terminated her employment.

Shockley and Williams.  In particular, although Williams viewed Horton's fraud allegations as lies, Williams did not file a criminal complaint or complete any affidavit that was used to support the arrest warrant.  The decision to pursue the false-reporting charge was made by Shockley acting in collaboration with an Assistant Attorney General. In addition, the arrest warrant was based on an affidavit completed by Shockley and did not even mention Williams's belief as to why Horton made the fraud allegations.  <u>See Lowe v. Aldridge</u>, 958 F.2d 1565, 1573 (11th Cir. 1992) (since Aldridge played no role in the preparation of the affidavit in support of the search warrant, she "was not a state actor for section 1983 purposes, nor can she be considered to have acted in concert with state actors").

Without any evidence that Williams, either for himself or on behalf of National Seating, entered into a conspiracy with Shockley, Horton's § 1983 claims against Williams and the company must fail because Williams and the company are private actors who do not meet the under-color-of-state-law

requirement.  Williams and National Seating are therefore entitled to summary judgment.

Gerald Shockley:  Shockley, who is sued in his individual capacity only, contends that he is immune from suit pursuant to the doctrine of qualified immunity.[2]

This doctrine insulates government employees, sued in their individual capacities, from suit and liability for civil damages for actions taken pursuant to their discretionary authority.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  "To receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful act occurred."  Wood v. Kesler, 323 F.3d 872, 877 (11th Cir. 2003) (citation and internal quotation marks omitted).  In this case, it is undisputed that Shockley was

_____

2.  In a prior opinion and order, this court dismissed all of Horton's claims against Shockley in his official capacity as well as her claims against Shockley in his individual capacity arising out of the Fifth Amendment and the Fourteenth Amendment except insofar as the Fourteenth Amendment was invoked as incorporating the Fourth Amendment against a state defendant.  Horton v. Williams, 2007 WL 1575974 (M.D. Ala. May 30, 2007) (Thompson, J.).

acting within his discretionary authority when he filed an affidavit in support of an arrest warrant that led to Horton's arrest and prosecution.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. (citation omitted). In determining whether a public employee is entitled to qualified immunity, a court must undertake a two-step analysis. Sims v. Metropolitan Dade County, 972 F.2d 1239, 1236 (11th Cir. 1992). First, a court must determine whether the evidence establishes a violation of federal law. Scott v. Harris, 127 S.Ct. 1769, 1774 (2007). If the evidence supports a constitutional violation, the court must then determine whether the defendant's acts or omissions transgressed clearly established statutory or constitutional law of which a reasonable person would have known. Hope v. Pelzer, 536 U.S. 730, 737 (2002).

Malicious prosecution is "a violation of the Fourth Amendment and a viable constitutional tort cognizable under

§ 1983." <u>Wood</u>, 323 F.3d at 881.  "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution," the latter of which can be determined by looking to both federal and state law.  <u>Id</u>.  The Fourth Amendment requires that an officer have probable cause for an arrest. <u>Gerstein v. Pugh</u>, 420 U.S. 103, 112 (1975).  Malicious prosecution requires proof of: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4)  caused damage to the plaintiff accused."  <u>Wood</u>, 323 F.3d at 882; <u>see also</u> <u>Delchamps, Inc. v. Bryant</u>, 738 So.2d 824, 831-32 (Ala. 1999).  The parties do not dispute the first, third, and fourth  element:  Shockley  instituted  the  criminal prosecution against Horton by submitting an affidavit for an arrest warrant; Horton was acquitted of the charge of false reporting to law enforcement officers; and Horton has

14

presented evidence of damage including loss of job opportunities and emotional distress resulting from the prosecution. The second element requiring proof of lack of probable cause is disputed.

Because Horton has not established that Shockley acted without "arguable" probable cause, she has not proven the probable-cause element. "A law enforcement officer has probable cause to arrest a suspect if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Von Stein v. Brescher, 904 F.2d 572, 578 (11th Cir. 1990) (citation omitted). "Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004) (emphasis added) (citation omitted). This lower arguable probable cause standard is based on the recognition that "it is inevitable that law enforcement

officials will in some cases reasonably but mistakenly conclude that probable cause is present, and ... that in such cases those officials ... should not be held personally liable." Anderson v. Creighton, 483 U.S. 635, 641 (1987). To determine "[w]hether a particular set of facts gives rise to ... arguable probable cause to justify an arrest for a particular crime depends ... on the elements of the crime." Crosby, 394 F.3d at 1332.

Horton was arrested pursuant to an arrest warrant for falsely reporting to law-enforcement authorities that National Seating defrauded Medicaid by failing to deliver wheelchairs that were paid for by Medicaid. To commit the crime of false reporting to law-enforcement authorities, the person must "knowingly make[] a false report or cause[] the transmission of a false report to law enforcement authorities of a crime or relating to a crime." 1975 Ala. Code § 13A-10-9; See also Williams v. State, 600 So.2d 432, 434 (Ala. Cr. App. 1992).

In determining whether there was arguable probable cause here, this court looks to the application filed by

16

Shockley in support of the arrest warrant. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344 (1986) (internal citation omitted). Shockley's affidavit submitted to the state judicial officer in support of the arrest warrant stated:

> "Your affiant, Gerald G. Shockley, an Investigator with the Alabama Attorney General's Office, Montgomery, Alabama does hereby depose and affirm that he has conducted an investigation and determined that there is probable cause to believe that Elizabeth Horton did on 4/15/05 make a false report to a law enforcement officer employed by the Alabama Attorney General's Office, in violation of Alabama Code 13A-10-9.

> "On April 15, 2005, Ms. Elizabeth Horton, a former employee of National Seating and Mobility, a company that specializes in special order wheelchairs for handicapped children, Montgomery, Alabama, reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed. Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said she had

17

knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs.

"Gerald Shockley has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors have stated they received the wheelchairs for the Medicaid recipient.

"Ms. Felicia Barrow, Prior Approval Unit, Alabama Medicaid Agency has been contacted and she has no evidence nor any knowledge that National Seating and Mobility has billed for wheelchairs not delivered other than the verbal allegation made by Elizabeth Horton.

"After conducting investigation and only finding evidence refuting the allegation, your affiant concludes that there is probable cause to believe Elizabeth Horton knowingly and intentionally furnished a false report to law enforcement on April 15, 2005 when she alleged she had knowledge that wheelchairs had been billed by National Seating and Mobility to the Medicaid Agency that had not been delivered."

Affidavit of Gerald Shockley (Doc. No. 69, Exh. E). Horton contends that arguable probable cause was lacking because, contrary to the statements in the above affidavit, she never reported to law enforcement authorities that National Seating defrauded Medicaid by stating that recipients never

received wheelchairs billed to Medicaid by the company. In other words, according to Horton, Shockley's affidavit is based on a false statement of fact that precludes a finding of arguable probable cause.

The facts and circumstances (true or not) within Shockley's knowledge are what matter for purposes of determining the existence of arguable probable cause. Prior to the filing of his affidavit with the state judicial officer, Shockley had knowledge of statements from Roeder, the investigator from the Attorney General's Office who preceded Shockley, detailing his interview with Horton. Roeder's description of his interview with Horton is contained in an affidavit to this court. The affidavit provides, in part, as follows:

> "6. I interviewed Ms. Horton on April 15, 2005. At that time, she alleged that while working for [National Seating], the company billed the Alabama Medicaid Agency for wheelchairs that had not actually been delivered to [the company's] clients, who were Medicaid recipients.
>
> "7. I showed Horton a computer printout of all billings made by [the

> company] to Medicaid from October 1, 2003
> until December 31, 2004.  I asked Horton
> to review the printout and identify
> recipients she recognized as having not
> received a wheelchair.  She placed a
> check mark next to 37 names, which she
> recognized but which she could not say
> had been fraudulently billed."

Affidavit of Michael Roeder (Doc. No. 69, Exh. G).  For purposes of summary judgment, the court will assume that this affidavit, although filed for purposes of this case, contains the information provided to Shockley about the interview prior to the time he filed the affidavit; that is, Horton has not shown that Roeder did not provide this information (true or not) to Shockley.

Horton has shown that Shockley's affidavit to the state judicial officer is, in part, inconsistent with Roeder's affidavit in describing his interview with her. Shockley states in his affidavit: "Elizabeth Horton furnished the names of 37 Medicaid recipients whom she said had knowledge by virtue of her previous employment, who did not receive delivery of wheelchairs."  In contrast, Roeder states in his affidavit that Horton "placed a check mark

next to 37 names, which she recognized but which she could

not say had been fraudulently billed." Considering that

only Roeder interviewed Horton, and because the court must

view the evidence in Horton's favor, this court must assume

at this time that the statement in Shockley's affidavit to

the state judicial officer in this regard was false.[3]

---

3. Shockley has sought to substitute a corrected affidavit by Roeder for Roeder's original affidavit. Motion to Substitute Corrected Affidavit (Doc. No. 101). In his corrected affidavit, Roeder eliminates any inconsistency with Shockley's affidavit and states in relevant part as follows:

"7. I showed Horton a computer printout of all billings made by [National Seating] to Medicaid from October 1, 2003 until December 31, 2004. I asked Horton to review the printout and identify recipients she recognized as having not received a wheelchair. She placed a check mark next to 37 names, which she recognized as instances where wheelchairs were not received but that Medicaid was billed by National Seating."

Corrected Affidavit of Michael Roeder (Doc. No. 101, Exh. B). Because the court is viewing the evidence in the light most favorable to Horton, it has not considered Roeder's corrected affidavit.

21

Although "the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen," Jones v. Cannon, 174 F.3d 1271, 1285 (11th Cir. 1999), in order for an officer to be held liable under the Fourth Amendment it must be shown that "such false statements were necessary to the probable cause [finding]." Id. (citing Malley, 475 U.S. at 344-45); see also Dahl v. Holley, 312 F.3d 1228, 1236 n.7 (11th Cir. 2002) (finding officers not liable under the Fourth Amendment on the alternative ground that "the omitted facts [were] not clearly critical to the probable cause determination"). Even assuming that Shockley knowingly made a false statement in his arrest affidavit, the remaining contents were sufficient to support arguable probable cause.

In addition to the above inconsistent statement, Shockley also stated in his affidavit that "Ms. Elizabeth Horton ... reported to a Law Enforcement Officer with the Alabama Attorney General's Office, that National Seating

and Mobility has fraudulently billed the Alabama Medicaid Agency for wheelchairs they did not deliver as claimed." This statement, in contrast with the above inconsistent statement, is consistent with Roeder's statement that Horton "alleged that while working for [National Seating], the company billed the Alabama Medicaid Agency for wheelchairs that had not actually been delivered to [its] clients, who were Medicaid recipients." Shockley also described his investigation as follows: He "has contacted 24 of the 37 sponsors for the Medicaid recipients and all 24 sponsors stated they received the wheelchairs for the Medicaid recipient." Shockley's statement, which is consistent with what Roeder stated in his affidavit he told Shockley, in combination with the results of Shockley's own investigation as described in his affidavit, was sufficient by itself to establish arguable probable cause for the arrest.

As alleged by Horton, she may have never told Roeder that the 37 Medicaid recipients that she checkmarked were the exact ones who were fraudulently billed. Nonetheless,

Shockley knew, based on his conversation with Roeder, that the 37 Medicaid recipients were, at the very least, ones she recognized from working at the company. Thus, even if Shockley's investigation was based on his false understanding that Horton had alleged that the 37 Medicaid recipients checkmarked had been fraudulently billed, the results of the investigation provided arguable probable cause to arrest for false reporting to a law-enforcement officer because none of the 24 checkmarked recipients that Shockley contacted had been subject to fraud. In other words, because Shockley knew that 37 Medicaid recipients were the only ones that Horton remembered having contact with while she worked at National Seating and because according to Roeder, she had alleged that "the company billed the Alabama Medicaid Agency for wheelchairs that had not actually been delivered to [its] clients, who were Medicaid recipients," it was reasonable for Shockley, or any reasonably prudent officer, to conclude that there was arguable probable cause for false reporting after contacting most of the recipients and finding that none of

24

them provided support for Horton's fraud report as Shockley heard it from Roeder.

Shockley therefore had arguable probable cause to believe Horton had made a false report to law-enforcement authorities. He is entitled to qualified immunity on the alleged Fourth Amendment violation.

***

For the foregoing reasons, the defendants' motions for summary judgment will be granted on Horton's § 1983 claims.

An appropriate judgment will be entered.

DONE, this the 27th day of August, 2008.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE